UNITED STATES DISTRICT COURT FOR THE MIDDLE
DISTRICT OF PENNSYLVANIA

VICTORIA VESPICO,                              :
                                               :
                    Plaintiff                  :
v                                              :
                                               :    No.
ROBYN KASS-GERJI; LAURA COLLINS :
and DAILY-MAIL ON-AIR, LLC                     :
                                               :
                    Defendants                 :
_____            :

## COMPLAINT - CIVIL ACTION

AND NOW comes the plaintiff Victoria Vespico, by and through counsel, and

demands of the defendants damages for loss sustained, plus interest, costs and

damages for prejudgment delay upon the causes of action set forth in the following:

## THE PARTIES AND RELATED ENTITIES

1.      Plaintiff is an adult individual residing within the Commonwealth of

Pennsylvania.  Plaintiff may be contacted by and through counsel, Steven F. Marino,

Esquire or Joseph Auddino, Esquire of Marino Associates at 301 Wharton Street,

Philadelphia, PA 19147.

2.      Defendant Robyn Kass-Gerji is an adult individual with an address for

the service of process located 9408 Pirouette Court, Upper Marlboro, MD 20772.

3.      Defendant Laura Collins is an adult individual with an address for the

service of process located 51 Astor Pl, Fl 9, New York, NY 10003-7139.  At all

relevant times material hereto, defendant Laura Collins was an employee of defendant Daily Mail On-Air, LLC acting within the scope of her employment.

4.     Defendant Daily Mail On-Air, LLC (hereinafter "*Daily Mail*") is a for-profit business entity operating with an office for service of process located 51 Astor Pl, Fl 9, New York, NY 10003-7139. At all relevant times material hereto, defendant Daily Mail was in the business of producing and broadcasting news and entertainment content for public consumption. At all relevant times material hereto, defendant Daily Mail acted by and through its duly authorized employees, agents, workers and/or representatives acting within the scope of their employment. At all relevant times material hereto, defendant Daily Mail regularly conducted business in the Commonwealth of Pennsylvania.

## **JURISDICTION AND VENUE**

5.     Plaintiff incorporates by reference the previous paragraphs of the Complaint as if set forth fully hereto.

6.     This Court maintains original jurisdiction over the instant claims pursuant to 28 U.S.C.A. § 1332 as a result of the controversy between the parties exceeding the sum or value in excess of the statutory threshold, exclusive of interest and costs, and is between citizens of different States.

7.     For the purpose of diversity pursuant to 28 U.S.C.A. § 1332 the plaintiff is a citizen of the Commonwealth of Pennsylvania; defendant Robyn Kass-

Gerji is a citizen of the state of Maryland; defendant Laura Collins is a citizen of the state New York; and defendant Daily Mail a citizen of the state New York.

8.     Plaintiff further invokes supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for claims arising under state law, as these claims form part of the same case and controversy of claims initiated.

9.     Venue of this matter is properly laid in this judicial district pursuant to 28 U.S.C. 28 U.S.C. § 1391(b)(2) upon a basis a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated in this judicial district.

10.     Venue of this matter is properly laid in this judicial district pursuant to 28 U.S.C. § 1391(b)(3) upon the basis named business entity defendants are subject to the court's personal jurisdiction within this judicial district.

## **GENERAL ALLEGATIONS**

11.     Plaintiff incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

12.     At all times relevant hereto plaintiff was a participant in the Miss America Organization.

13.     At all times relevant hereto the defendant Robyn Kass-Gerji was a participant in the Miss America Organization.

## THE MISS AMERICA ORGANIZATION AND
## MISS PENNSYLVANIA SCHOLARSHIP COMPETITION

14.    Plaintiff incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

15.    The Miss America Organization is a nonprofit organization with primary purposes of providing scholarships and promoting social causes.

16.    The Miss America Organization sponsors the Miss America Pageant and a supporting pageant system which operates throughout the United States at the state, regional, and local levels.

17.    The Miss America Organization grants state franchises to one responsible pageant organization in each state of the United States.

18.    Each state organization conducts a statewide pageant competition in accordance with all the rules and regulations established by the Miss America Organization.

19.    The state pageant organizations, in turn, are responsible for reciprocal franchising of responsible pageant organizations within each state to sponsor local and regional competitions.

20.    Miss Pennsylvania Scholarship Foundation is the local (state) entity that operates as part of the broader Miss America Organization system, managing the state-level competition and providing scholarship opportunities in Pennsylvania.

21.    The Miss Pennsylvania Scholarship Foundation, Inc. organizes and hosts the Miss Pennsylvania Scholarship Competition.

22.    The plaintiff and defendant Robyn Kass-Gerji, were competition peers in the 2024 Miss Pennsylvania Scholarship Competition.

23.    The Miss America Organization required all 2024 Miss Pennsylvania Scholarship Competition participants to maintain residency within the Commonwealth of Pennsylvania.

24.    Defendant Robyn Kass-Gerji was not domiciled in the Commonwealth of Pennsylvania in the calendar year 2024.

25.    Defendant Robyn Kass-Gerji did not maintain residency in the Commonwealth of Pennsylvania in the calendar year 2024 sufficient to satisfy Miss Pennsylvania Scholarship Competition residency requirement.

26.    Defendant Robyn Kass-Gerji was ineligible to participate in the 2024 Miss Pennsylvania Scholarship Competition.

27.    The 2024 Miss Pennsylvania Scholarship Competition was convened June 13, 2024, continuing through June 15, 2024.

### THE POTENTIAL OF DISQUALIFICATION OF PAGEANT CONTESTANTS FOUND TO HAVE ENGAGED IN HARASSING, THREATENING, OR CRIMINAL BEHAVIOR

28.    Plaintiff incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

29.    The Miss America Organization operates under a policy condemning the behavior of a participant, staff member, or volunteer which one could characterize as harassing, discriminatory, or abusive.

30.    In the event a participant is found to have engaged in harassing, discriminatory, or abuse behavior, the Miss America Organization reserves the right to take disciplinary action against the participant, which action may include pageant disqualification or involvement termination.

31.    The Miss America Organization operates under a Miss America's Code of Ethics and Conduct.

32.    In the event a participant is found to have violated the Miss America's Code of Ethics and Conduct, the Miss America Organization reserves the right to take disciplinary action against the participant which action may include pageant disqualification or involvement termination.

33.    In the event a participant is found to have committed a criminal offense, the Miss America Organization reserves the right to take disciplinary action against the participant which action may include pageant disqualification or involvement termination.

**DEFENDANT ROBYN KASS-GERJI FALSE REPORTING THAT PLAINTIFF COMMITTED ACTS OF HARASSMENT, TERRORISTIC THREATS, AND CRIMINAL BEHAVIOR**

34.    Plaintiff incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

**Defendant Robyn Kass-Gerji's False Reporting to Findlay Township Police Department Law Enforcement Officials**

35.    In or about the month of April 2024, defendant Robyn Kass-Gerji falsely reported to Findlay Township Police Department law enforcement officials, Allegheny County, PA plaintiff sent text messages to defendant Robyn Kass-Gerji with the intent to harass defendant Robyn Kass-Gerji.

36.    In or about the month of April 2024, defendant Robyn Kass-Gerji falsely reported to Findlay Township Police Department law enforcement officials, Allegheny County, PA plaintiff sent text messages to defendant Robyn Kass-Gerji with the intent to threaten defendant Robyn Kass-Gerji.

37.    In or about the month of April 2024, defendant Robyn Kass-Gerji falsely reported to Findlay Township Police Department law enforcement officials, Allegheny County, PA plaintiff threatened her with physical harm and violence.

38.    Findlay Township Police Department law enforcement officials determined there existed insufficient evidence to form a belief of reasonable suspicion plaintiff had behaved in criminal manner towards defendant Robyn Kass-Gerji.

39.     After being unsuccessful in persuading law enforcement officials to initiate criminal process against plaintiff, defendant Robyn Kass-Gerji initiated civil process against plaintiff by filing an ex-parte Petition and Affidavit for Anti-Stalking Order in the Superior Court of the District of Columbia, Domestic Violence Division pursuant to D.C. Code §16-1061 et seq.

### Defendant Robyn Kass-Gerji's False Reporting of Facts in The Superior Court of the District of Columbia and Resulting Court Order

40.     On or about May 1, 2024, defendant Robyn Kass-Gerji submitted a verified Petition and Affidavit for Anti-Stalking Order in the Superior Court of the District of Columbia, Domestic Violence Division pursuant to D.C. Code §16-1061 et seq., assigned Case No. 2024 ASO 000437 accusing the plaintiff of sending text messages to defendant Robyn Kass-Gerji threatening her with physical harm and violence.

41.     The verified Petition and Affidavit for Anti-Stalking Order filed by defendant Robyn Kass-Gerji asserted plaintiff sent text messages to defendant Robyn Kass-Gerji threatening her with physical harm and violence on:

(a)     March 12, 2024 at approximately 5:00 p.m.;

(b)     April 1, 2024 at approximately 12:00 p.m.;

(c)     April 13, 2024 at approximately 9:00 a.m.; and

(d)     April 15, 2024, at approximately 11:30 a.m.

42.    On May 10, 2024, as a direct and proximate result of the allegations contained in the ex-parte Petition and Affidavit for Anti-Stalking Order, the plaintiff was subjected to a Temporary Anti-Stalking Order issued by the Superior Court of the District of Columbia, Domestic Violence Division from the dates of May 10, 2024 to May 15, 2024.

43.    On May 10, 2024, defendant Robyn Kass-Gerji submitted a verified Amended and Supplemental Petition and Affidavit for Anti-Stalking Order in the Superior Court of the District of Columbia, Domestic Violence Division pursuant to D.C. Code §16-1061 et seq., assigned Case No. 2024 ASO 000437 accusing the plaintiff of sending text messages to defendant Robyn Kass-Gerji threatening her with physical harm and violence.

44.    The verified Amended and Supplemental Petition and Affidavit for Anti-Stalking Order filed by defendant Robyn Kass-Gerji on May 10, 2024, asserted plaintiff sent text messages to defendant Robyn Kass-Gerji threatening her with physical harm and violence on:

        (a)    April 13, 2023, 9:00am;

        (b)    March 10, 2024, 3:25pm;

        (c)    March 12, 2024, 5:00pm;

        (d)    March 23, 3034, 10:00am;

        (e)    April 1, 2024, 12:00pm;

(f)     April 3, 2024, 2:27pm;

(g)     April 5, 2024, 3:00pm;

(h)     April 15, 2024, 11:30am; and

(i)     May 8, 2024, 2:00am.

45.    On May 14, 2024 defendant Robyn Kass-Gerji filed a verified 2nd Supplemental Petition and Affidavit for Anti-Stalking Order in the Superior Court of the District of Columbia, Domestic Violence Division pursuant to D.C. Code §16-1061 et seq., assigned Case No. 2024 ASO 000437.

46.    The verified 2nd Supplemental Petition and Affidavit for Anti-Stalking Order filed May 14, 2024, asserts plaintiff confronted defendant Robyn Kass-Gerji and/or sent text messages to defendant Robyn Kass-Gerji with the intent to harass defendant Robyn Kass-Gerji and cause her to fear for her safety on:

(a)     March 10, 2024 (no time listed by petitioner/defendant);

(b)     March 11, 2024 (no time listed by petitioner/defendant);

(c)     March 12, 2024 at approximately 5:07 pm;

(d)     March 23, 2024 at approximately 9:51 am;

(e)     April 1, 2024 (no time listed by petitioner/defendant);

(f)     April 3, 2024 at approximately 2:27 pm;

(g)     April 4, 2024 at approximately 10:00 am;

(h)     April 9, 2024 at approximately 4:48 pm;

(i)     April 13, 2024 at approximately 9:00 pm;

(j)     April 14, 2024 at approximately 11:28 am;

(k)     April 15, 2024 at approximately 11:27 am;

(l)     April 25, 2024 (no time listed by petitioner/defendant);

(m)     May 1, 2024 at approximately 7:54 pm;

(n)     May 8, 2024 at approximately 1:45 am; and

(o)     May 10, 2024 at approximately 8:03 am.

47.    On May 15, 2024, as a direct and proximate result of the verified petitions for protection from abuse filed by defendant Robyn Kass-Gerji, the Superior Court of the District of Columbia, Domestic Violence Division issued a Temporary Anti-Stalking Order against plaintiff effective May 15, 2024 through May 29, 2024.

48.    As a direct and proximate result of the verified petitions for protection from abuse filed by defendant Robyn Kass-Gerji, The Superior Court of the District of Columbia, Domestic Violence Division ordered the plaintiff to appear May 29, 2024, and defend against the allegations of threats and harassment lodged by defendant Robyn Kass-Gerji.

49.    On May 29, 2024, a hearing was convened before the Honorable Superior Court of District of Columbia Magistrate Judge John McCabe, in

11

connection with defendant Robyn Kass-Gerji's 2nd Supplemental Petition and Affidavit for Anti-Stalking Order, assigned Case No. 2024 ASO 000437.

50.     Plaintiff denied the allegations asserted in defendant Robyn Kass-Gerji's Supplemental Petition and Affidavit for Anti-Stalking Order, assigned Case No. 2024 ASO 000437.

51.     Defendant Robyn Kass-Gerji offered testimony during the May 29, 2024, hearing, plaintiff sent text messages to defendant Robyn Kass-Gerji with the intent to harass defendant Robyn Kass-Gerji.

52.     Defendant Robyn Kass-Gerji offered testimony during the May 29, 2024, hearing, plaintiff sent text messages to defendant Robyn Kass-Gerji with the intent to threaten defendant Robyn Kass-Gerji.

53.     Defendant Robyn Kass-Gerji offered testimony during the May 29, 2024, hearing, plaintiff threatened her with physical harm and violence.

54.     At no time did plaintiff threaten or harass defendant Robyn Kass-Gerji.

55.     The harassing and threatening text messages defendant Robyn Kass-Gerji alleged to have been received were not authored by the plaintiff.

56.     The harassing and threatening text messages defendant Robyn Kass-Gerji alleged to have been received were not sent from a cellular device or any other electronic device accessed by plaintiff.

57.    The harassing and threatening text messages defendant Robyn Kass-Gerji alleged to have been received were not sent from a cellular device or any other electronic device accessed by anyone acting on behalf of plaintiff.

58.    Defendant Robyn Kass-Gerji presented perjured testimony to the Honorable Superior Court of District of Columbia Magistrate Judge John McCabe.

59.    Defendant Robyn Kass-Gerji presented fabricated evidence to the Honorable Superior Court of District of Columbia Magistrate Judge John McCabe.

60.    The Honorable Superior Court of District of Columbia Magistrate Judge John McCabe employed a preponderance of the evidence standard during the May 29, 2024, hearing.

61.    The findings of the Honorable Superior Court of District of Columbia Magistrate Judge John McCabe were not determined as a result of Judge John McCabe employing a beyond of reasonable doubt standard of evidence during the May 29, 2024, hearing.

62.    The findings of the Honorable Superior Court of District of Columbia Magistrate Judge John McCabe are not, as a matter of law, consistent with a determination the plaintiff was determined to have violated a penal statute by a beyond a reasonable doubt standard of evidence.

63.    On or about June 5, 2024, as a direct and proximate result of the false statements and fabricated evidence presented to the Court by defendant Robyn Kass-

Gerji, the Honorable Superior Court of District of Columbia Magistrate Judge John McCabe, entered an Anti-Stalking Order, directing plaintiff: (1) not to commit or threaten to commit any criminal offenses against defendant Robyn Kass-Gerji, her family, or animals; (2) remain one hundred (100) feet from the defendant Robyn Kass-Gerji, her home, person, workplace, vehicle, her boyfriend, Mr. Zeth Merritt and Mother, Debra Kass-Gerji; and (3) if plaintiff and defendant Robyn Kass-Gerji participate in the same contest or pageant, plaintiff must remain at least twenty (20) feet away from defendant Robyn Kass-Gerji.

### Defendant Robyn Kass-Gerji's June 17, 2024, Defamatory Instagram Post

64.    At all relevant times material hereto, defendant Robyn Kass-Gerji was a member-user of the social media platform, Instagram.

65.    At all relevant times material hereto, defendant Robyn Kass-Gerji maintained an Instagram account.

66.    At all relevant times material hereto, defendant Robyn Kass-Gerji maintained an Instagram user name, "pageantgirlrobyn".

67.    At all relevant times material hereto, defendant Robyn Kass-Gerji's Instagram account, "pageantgirlrobyn", was a public account.

68.    At all relevant times material hereto, posts appearing on defendant Robyn Kass-Gerji's Instagram account, "pageantgirlrobyn", were accessible for viewing by the general public.

69.     On or about June 17, 2024, defendant Robyn Kass-Gerji authored a post published on her Instagram account under the user name, "pageantgirlrobyn" which displayed the June 5, 2024, Anti-Stalking Order entered by the Honorable Superior Court of District of Columbia Magistrate Judge John McCabe.



[Instagram post authored and broadcasted by defendant Robyn Kass-Gerji on or about June 17, 2024]

70.     Defendant Robyn Kass-Gerji's June 17, 2024, Instagram post implicates the plaintiff stalked the defendant Robyn Kass-Gerji during the calendar months March 2024 through May 2024.

71.    Defendant Robyn Kass-Gerji's June 17, 2024, Instagram post implicates on April 13, 2024, plaintiff made an in-person threat to physically harm defendant Robyn Kass-Gerji placing her in fear of imminent bodily harm.

72.    Defendant Robyn Kass-Gerji's June 17, 2024, Instagram post implicates plaintiff made numerous threats to kill defendant Robyn Kass-Gerji, her family members, and her animals in text messages during the calendar months March 2024, April 2024, and May 2024.

73.    Defendant Robyn Kass-Gerji's June 17, 2024, Instagram post imputes the impression in the minds of the average persons, among whom it is intended to circulate, a false impression plaintiff committed acts of violence against defendant Robyn Kass-Gerji.

74.    Defendant Robyn Kass-Gerji's June 17, 2024, Instagram post imputes the impression in the minds of the average persons, among whom it is intended to circulate, a false impression plaintiff committed acts of harassment against defendant Robyn Kass-Gerji.

75.    Defendant Robyn Kass-Gerji's June 17, 2024, Instagram post imputes the impression in the minds of the average persons, among whom it is intended to circulate, a false impression plaintiff committed acts with an intent to terrorize defendant Robyn Kass-Gerji.

76.    Defendant Robyn Kass-Gerji's June 17, 2024, Instagram post imputes the impression in the minds of the average persons, among whom it is intended to circulate, a false impression plaintiff is criminally guilty of the crimes of harassment and terroristic threats.

77.    Defendant Robyn Kass-Gerji's June 17, 2024, Instagram has the impact of tending to harm the reputation of the plaintiff as to lower her estimation in the community.

**Defendant Robyn Kass-Gerji's False Reports
to Journalist Jasmine Brooks of CBS21**

78.    CBS 21 WHP-TV (referred to hereafter as "CBS 21") is a television station with a principal place of business located in Harrisburg, Pennsylvania which serves the Susquehanna Valley region as an affiliate of CBS, MyNetworkTV, and The CW.

79.    Upon information and belief, Ms. Jasmine Brooks is a journalist and news anchor employed by CBS 21.

80.    On or about June 14, 2024, during the 2024 Miss Pennsylvania Scholarship Competition, defendant Robyn Kass-Gerji was interviewed by journalist Jasmine Brooks.

81.    Journalist Jasmine Brooks encouraged defendant Robyn Kass-Gerji to share with the CBS 21 audience the experience defendant Robyn Kass-Gerji was having as a contestant competing in the Miss Pennsylvania Scholarship competition.

82.     Defendant Robyn Kass-Gerji falsely reported to journalist Jasmine Brooks defendant Robyn Kass-Gerji owned a home in the Commonwealth of Pennsylvania in the calendar year 2024 sufficient to satisfy Miss Pennsylvania Scholarship Competition residency requirement.

83.     Defendant Robyn Kass-Gerji falsely reported to journalist Jasmine Brooks plaintiff made an in-person threat to physically harm defendant Robyn Kass-Gerji placing defendant Robyn Kass-Gerji in fear of imminent bodily harm.

84.     Defendant Robyn Kass-Gerji falsely reported to journalist Jasmine Brooks plaintiff sent defendant Robyn Kass-Gerji threatening and harassing text messages.

85.     Defendant Robyn Kass-Gerji shared purported screenshots of threatening and harassing text messages she contended were sent to her by the plaintiff with journalist Jasmine Brooks.

86.     Defendant Robyn Kass-Gerji shared a copy of the June 5, 2024, Anti-Stalking Order entered by the Honorable Superior Court of District of Columbia Magistrate Judge John McCabe with journalist Jasmine Brooks.

87.     Defendant Robyn Kass-Gerji falsely reported to journalist Jasmine Brooks she withdrew from 2024 Miss Pennsylvania Scholarship Competition as a result of death threats she received from another contestant.

88.    Journalist Jasmine Brooks' June 14, 2024, interview of defendant Robyn Kass-Gerji was recorded by video.

89.    Journalist Jasmine Brooks' June 14, 2024, interview of defendant Robyn Kass-Gerji was broadcasted on CBS 21 television station June 14, 2024.

90.    As a result of CBS 21 television station's June 14, 2024, broadcast of journalist Jasmine Brooks' interview of defendant Robyn Kass-Gerji, numerous other news outlets and television stations, inclusive of: CBS News, KATV ABC News, WSYX ABC News, Fox 17 News, NBC News - Montana, WRKC Local 12 CBS News, WZTV CBS News, KDKA CBS News, PennLive, Entertainment Now, Butler Eagle, and the Daily Mail continued to report upon defendant Robyn Kass-Gerji's allegations of being harassed and threatened from another contestant.

### Defendant Robyn Kass-Gerji's False Reports to Investigative Reporter Laura Collins of Daily Mail

91.    At all relevant times material hereto defendant Laura Collins served as an investigative reporter on behalf of defendant Daily Mail.

92.    On or about July 7, 2024, defendant Robyn Kass-Gerji was interviewed by Investigative Reporter defendant Laura Collins.

93.    Defendant Robyn Kass-Gerji falsely reported to investigative reporter defendant Laura Collins plaintiff made an in-person threat to physically harm defendant Robyn Kass-Gerji placing her in fear of imminent bodily harm.

94.     Defendant Robyn Kass-Gerji falsely reported to investigative reporter defendant Laura Collins plaintiff vandalized defendant Robyn Kass-Gerji's car on the eve of the 2024 Miss Pennsylvania Scholarship Competition.

95.     Defendant Robyn Kass-Gerji shared purported screens shots of threatening and harassing text messages she contended were sent to her by the plaintiff with investigative reporter defendant Laura Collins.

96.     Defendant Robyn Kass-Gerji falsely reported to investigative reporter defendant Laura Collins plaintiff sent defendant Robyn Kass-Gerji threatening text messages dated April 1, 2024, stating:

- *I swear if you leave DC I will ruin your life*

- *I will come to DC and set your house on fire and what you scream as your stupid dogs die*

- *It'll be so funny*

- *Maybe I'll even take care of that awful boyfriend of yours*

- *It's not like either of you will be missed*

- *I can't wait to see the life leave your eyes as I crush your whole world*

- *You will kill yourself*

- *Or I will kill you*

97.    Defendant Robyn Kass-Gerji falsely reported to investigative reporter defendant Laura Collins plaintiff sent defendant Robyn Kass-Gerji threatening text messages dated April 3, 2024, stating:

- *Hey piggy bitch*

- *Are u ready to die now?*

- *Just so you know no one is going to protect you.*

- *No one believes you.*

98.    Defendant Robyn Kass-Gerji falsely reported to investigative reporter defendant Laura Collins plaintiff sent defendant Robyn Kass-Gerji threatening text messages dated April 4, 2024, stating:

- *I get that ugly boyfriend of yours doesn't even believe you*

- *Have you showed him these messages*

- *Did you tell him that when I kill you that I'm going to kill him too*

- *And your stupid dogs*

- *If you come back to PA I will come down to your house and DC and set your house on fire*

- *I will first stab your boyfriend then set the house on fire so everyone thinks you did it*

- *God you are such a piece of shit*

- *I can't believe you're even trying to compete*

99.    Defendant Robyn Kass-Gerji falsely reported to investigative reporter defendant Laura Collins plaintiff sent defendant Robyn Kass-Gerji a threatening text message dated April 9, 2024, stating:

- *You should just kill yourself*

- *Unless you want me to do it for you*

- *How should I do it*

- *Knife*

- *Hit you with a car*

- *What's slower and more painful*

- *I'll think about it*

- *If you compete at miss Pa this year I'll do it then*

100.    Defendant Robyn Kass-Gerji shared a copy of the June 5, 2024, Anti-Stalking Order entered by the Honorable Superior Court of District of Columbia Magistrate Judge John McCabe with investigative reporter defendant Laura Collins.

101.    Investigative reporter defendant Laura Collins created a news article titled "*Miss Pennsylvania runner-up Victoria Vespico called rival Robyn Kass-Gerji 'piggy b***h' and texted her: 'Are u ready to die now?' - before landing a job mentoring America's kids*".

102.    On July 7, 2024 at 11:40 a.m., the Daily Mail Article titled "*Miss Pennsylvania runner-up Victoria Vespico called rival Robyn Kass-Gerji 'piggy*

*b\*\*\*h' and texted her: 'Are u ready to die now?' - before landing a job mentoring America's kids"* was published online by defendant Daily Mail.

103.    The Daily Mail Article titled "*Miss Pennsylvania runner-up Victoria Vespico called rival Robyn Kass-Gerji 'piggy b\*\*\*h' and texted her: 'Are u ready to die now?' - before landing a job mentoring America's kids"* reports Daily Mail's investigation has unearthed more of the blood-curdling comments made by Vespico across hundreds of texts submitted as evidence in the case.

### COUNT I
### ABUSE OF PROCESS
### (Plaintiff v. Robyn Kass-Gerji)

104.    Plaintiff incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

105.    On May 1, 2024, defendant Robyn Kass-Gerji initiated civil process against the plaintiff by filing a verified Petition and Affidavit for Anti-Stalking Order in the Superior Court of the District of Columbia, Domestic Violence Division pursuant to D.C. Code §16-1061 et seq., and the matter was assigned Case No. 2024 ASO 000437.

106.    The Petition and Affidavit for Anti-Stalking Order filed by defendant Robyn Kass-Gerji in the Superior Court of the District of Columbia falsely accuses the plaintiff of committing acts of harassment and terroristic threats towards the defendant Robyn Kass-Gerji, her family, and her pets.

107.   The information in the body of a Petition and Affidavit for Anti-Stalking Order filed by defendant Robyn Kass-Gerji in the Superior Court of the District of Columbia falsely accusing the plaintiff of committing acts of harassment and terroristic threats towards the defendant Robyn Kass-Gerji, her family, and her pets was relied upon by the Superior Court of the District of Columbia's issuing authorities.

108.   As a result of the Petition and Affidavit for Anti-Stalking Order defendant Robyn Kass-Gerji prepared, or otherwise provided information to be included therein, legal process was initiated against the plaintiff by administrators of the Superior Court of District of Columbia.

109.   Defendant Robyn Kass-Gerji knew and/or reasonably should have known the false information contained in the Petition and Affidavit for Anti-Stalking Order filed in the Superior Court of the District of Columbia would be relied upon by administrators of the Superior Court of District of Columbia responsible for initiating civil process against the plaintiff.

110.   Defendant Robyn Kass-Gerji initiated civil process against the plaintiff in the Superior Court of the District of Columbia to accomplish a purpose other than to prevent herself from being a victim of stalking.

111.   Defendant Robyn Kass-Gerji initiated civil process against the plaintiff in the Superior Court of the District of Columbia for reasons which are inconsistent

with and contrary to the purpose for which the District of Columbia's Anti-Stalking law was enacted, that is solely to protect persons from domestic violence or to prevent persons from being victims of stalking.

112.   Defendant Robyn Kass-Gerji initiated civil process against the plaintiff in the Superior Court of the District of Columbia for the purpose of falsely painting herself as a victim of abuse to further advance her non-profit victim advocacy organization and her victim advocacy platform.

113.   Defendant Robyn Kass-Gerji initiated civil process against the plaintiff in the Superior Court of the District of Columbia for the purpose of gaining media attention to advance her purported image as an advocate for victims of violence.

114.   Defendant Robyn Kass-Gerji initiated civil process against the plaintiff in the Superior Court of the District of Columbia for the purpose of damaging the plaintiff's reputation.

115.   Defendant Robyn Kass-Gerji initiated civil process against the plaintiff in the Superior Court of the District of Columbia for the purpose of coercing the plaintiff to withdraw from the 2024 Miss Pennsylvania Scholarship Competition.

116.   Defendant Robyn Kass-Gerji initiated civil process against the plaintiff in the Superior Court of the District of Columbia for the purpose of gaining a competitive advantage in the 2024 Miss Pennsylvania Scholarship Competition.

117. Defendant Robyn Kass-Gerji's improper and unlawful use of civil process was intentional.

118. Defendant Robyn Kass-Gerji's improper and unlawful use of civil process was deliberate.

119. Defendant Robyn Kass-Gerji's improper and unlawful use of civil process demonstrated a conscious disregard to the rights of the plaintiff.

120. Defendant Robyn Kass-Gerji's improper and unlawful use of civil process demonstrated a reckless indifference to the welfare of the plaintiff.

121. Defendant Robyn Kass-Gerji's improper and unlawful use of civil process was outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

122. As a direct and proximate result of the defendant Robyn Kass-Gerji's improper and unlawful use of civil process, plaintiff has been caused to incur attorney's fees and to expend various and diverse sums of money in an effort to defend herself against the Petition for Anti-Stalking Order filed against her.

123. As a direct and proximate result of the defendant Robyn Kass-Gerji's improper and unlawful use of civil process, plaintiff has been caused to be the subject of public scrutiny and ridicule.

124.   As a direct and proximate result of the defendant Robyn Kass-Gerji's improper and unlawful use of civil process, plaintiff has been caused to suffer damage and harm to her reputation.

125.   As a direct and proximate result of the defendant Robyn Kass-Gerji's improper and unlawful use of civil process, plaintiff has been caused to suffer physical discomfort, humiliation, embarrassment, emotional distress, mental anguish, sleeplessness, anxiety, depression characterized by feelings of despair, hopelessness, despondency, and injury to feelings, some or all of which may be permanent and which may continue indefinitely into the future.

126.   As a direct and proximate result of the defendant Robyn Kass-Gerji's unlawful use of civil process plaintiff was caused to suffer a loss of income.

WHEREFORE, the plaintiff prays for judgment in her favor against defendant Robyn Kass-Gerji, jointly and severally, the relief which follows:

I.     Plaintiff be awarded compensatory damages as proven at trial;

II.    Plaintiff be awarded punitive damages;

III.   The plaintiff be awarded delay damages;

IV.    Plaintiff be awarded further relief as this Court may deem appropriate.

**COUNT II**
**DEFAMATION PER SE**
**(Plaintiff v. Robyn Kass-Gerji)**

127.   Plaintiff incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

128.   At all times relevant hereto plaintiff was a non-public figure.

129.   In or about the month of April 2024, defendant Robyn Kass-Gerji falsely reported to Findlay Township Police Department law enforcement officials plaintiff had committed acts of harassment and terroristic threats towards the defendant Robyn Kass-Gerji, her family, and her pets.

130.   On or about June 14, 2024, defendant Robyn Kass-Gerji falsely reported to journalist Jasmine Brooks plaintiff had committed acts of harassment and terroristic threats towards the defendant Robyn Kass-Gerji, her family, and her pets.

131.   On June 17, 2024, defendant Robyn Kass-Gerji published a posting on her Instagram which falsely reported plaintiff had committed acts of harassment and terroristic threats towards the defendant Robyn Kass-Gerji, her family, and her pets.

132.   On July 7, 2024, defendant Robyn Kass-Gerji falsely reported to investigative reporter defendant Laura Collins plaintiff had committed acts of harassment and terroristic threats towards the defendant Robyn Kass-Gerji, her family, and her pets.

133.    Defendant Robyn Kass-Gerji knew or should have known the false information she published about the plaintiff to third parties would impute the impression in the minds of the average persons, among whom it is intended to circulate, the plaintiff victimized defendant Robyn Kass-Gerji.

134.    Defendant Robyn Kass-Gerji knew or should have known the false information she published about the plaintiff to third parties would impute the impression in the minds of the average persons, among whom it is intended to circulate, the plaintiff committed acts of harassment and terroristic threats.

135.    Defendant Robyn Kass-Gerji knew or should have known the false information she published about the plaintiff to third parties would impute the impression in the minds of the average persons, among whom it is intended to circulate, the plaintiff committed crimes of harassment and terroristic threats.

136.    Defendant Robyn Kass-Gerji knew or should have known the false information she published about the plaintiff to third parties would have the tendency to harm the reputation of the plaintiff as to lower her in the estimation of the community.

137.    Defendant Robyn Kass-Gerji knew or should have known the false information she published about the plaintiff to third parties would have the tendency to subject the plaintiff to public hatred, contempt, and ridicule.

138.   Defendant Roban Kass-Gerji published information to third parties that plaintiff committed acts of terroristic threats and harassment with a high degree of awareness of the false impression it conveyed about the plaintiff.

139.   Defendant Roban Kass-Gerji published information to third parties the plaintiff committed acts of terroristic threats and harassment despite knowing of the false impression it conveyed about the plaintiff.

140.   Defendant Roban Kass-Gerji published information to third parties the plaintiff committed acts of terroristic threats and harassment with a reckless disregard to the false impression it conveyed about the plaintiff.

141.   Defendant Roban Kass-Gerji published information to third parties the plaintiff committed acts of terroristic threats and harassment with a with malice and an evil motive.

142.   Defendant Roban Kass-Gerji published information to third parties the plaintiff committed acts of terroristic threats and harassment with a reckless or deliberate indifference to the rights of plaintiff.

143.   Defendant Robyn Kass-Gerji was not privileged or otherwise justified in publishing, uttering, or otherwise broadcasting the aforementioned false information about the plaintiff.

144.   Defendant Robyn Kass-Gerji is liable to the plaintiff for damages pursuant to the provisions of the Restatement (Second) of Torts, Section 570.

145.    Defendant Robyn Kass-Gerji is liable to the plaintiff for damages pursuant to the provisions of the Restatement (Second) of Torts, Section 571.

146.    Defendant Robyn Kass-Gerji is liable to the plaintiff for damages pursuant to the provisions of the Restatement (Second) of Torts, Section 573.

147.    Defendant Robyn Kass-Gerji is liable to the plaintiff for damages pursuant to the provisions of the Pennsylvania Uniform Single Publication Act, 42 Pa.C.S.A. §§ 8341 – 8345.

148.    Defendant Robyn Kass-Gerji's publication of false information about the plaintiff was intentional.

149.    Defendant Robyn Kass-Gerji's publication of false information about the plaintiff was deliberate.

150.    Defendant Robyn Kass-Gerji's publication of false information about the plaintiff demonstrated a conscious disregard to the rights of the plaintiff.

151.    Defendant Robyn Kass-Gerji's publication of false about the plaintiff demonstrated a reckless indifference to the welfare of the plaintiff.

152.    Defendant Robyn Kass-Gerji's publication of false information about the plaintiff was outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

153.   As a direct and proximate result of the defendant Robyn Kass-Gerji's aforementioned intentional, reckless, and/or malicious publication of false information about the plaintiff, the plaintiff was caused to receive messages published on Instagram, a social networking service, from unknown persons threatening to ruin plaintiff's life; set plaintiff's house on fire and watch plaintiff scream and her dogs die, among others.

154.   As a direct and proximate result of the defendant Robyn Kass-Gerji's aforementioned intentional, reckless, and/or malicious publication of false information about the plaintiff, the plaintiff was caused to suffer irreparable damage to her reputation.

155.   As a direct and proximate result of the defendant Robyn Kass-Gerji's aforementioned intentional, reckless, and/or malicious actions the plaintiff was caused to suffer damages per se.

156.   As a direct and proximate result of the defendant Robyn Kass-Gerji's aforementioned intentional, reckless, and/or malicious actions the plaintiff was caused to suffer anger, humiliation, embarrassment, emotional distress, and anxiety, some or all of which may be permanent and which may continue indefinitely into the future.

157.   As a direct and proximate result of the defendant Robyn Kass-Gerji's aforementioned intentional, reckless, and/or malicious actions the plaintiff was

caused to suffer loss of life's pleasures which may continue indefinitely into the future.

158.   As a direct and proximate result of the defendant Robyn Kass-Gerji's aforementioned intentional, reckless, and/or malicious actions the plaintiff was caused to suffer that loss aforementioned.

WHEREFORE, the plaintiff prays for judgment in her favor against defendant Robyn Kass-Gerji, jointly and severally, and the relief which follows:

I.      Plaintiff be awarded compensatory damages as proven at trial;

II.     Plaintiff be awarded punitive damages as proven at trial;

III.    Plaintiff be awarded interest and damages for prejudgment delay;

IV.    Plaintiff be awarded further relief as this Court may deem appropriate.

## COUNT III
## PRESENTATION OF FALSE LIGHT
## (Plaintiff v. Robyn Kass-Gerji)

159.   Plaintiff incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

160.   In or about the month of April 2024, defendant Robyn Kass-Gerji reported to Findlay Township Police Department law enforcement officials plaintiff had committed acts of harassment and terroristic threats towards the defendant Robyn Kass-Gerji, her family, and her pets with knowledge of the falsity of her reporting and the false light in which it placed the plaintiff.

161.   Defendant Robyn Kass-Gerji's reporting to Findlay Township Police Department law enforcement officials plaintiff had committed acts of harassment and terroristic threats towards the defendant Robyn Kass-Gerji, her family, and her pets presents the plaintiff in a false light which is highly offensive to the sensibilities of a reasonable person.

162.   On or about June 14, 2024, defendant Robyn Kass-Gerji falsely reported to journalist Jasmine Brooks plaintiff had committed acts of harassment and terroristic threats towards the defendant Robyn Kass-Gerji, her family, and her pets with knowledge of the falsity of her reporting and the false light in which it placed the plaintiff.

163.   Defendant Robyn Kass-Gerji's reporting to journalist Jasmine Brooks plaintiff had committed acts of harassment and terroristic threats towards the defendant Robyn Kass-Gerji, her family, and her pets presents the plaintiff in a false light which is highly offensive to the sensibilities of a reasonable person.

164.   On June 17, 2024, defendant Robyn Kass-Gerji published a posting on her Instagram which falsely reported plaintiff had committed acts of harassment and terroristic threats towards the defendant Robyn Kass-Gerji, her family, and her pets with knowledge of the falsity of her reporting and the false light in which it placed the plaintiff.

165.   Defendant Robyn Kass-Gerji's June 17, 2024, Instagram post presents the plaintiff in a false light which is highly offensive to the sensibilities of a reasonable person.

166.   On July 7, 2024, defendant Robyn Kass-Gerji falsely reported to investigative reporter defendant Laura Collins plaintiff had committed acts of harassment and terroristic threats towards the defendant Robyn Kass-Gerji, her family, and her pets with knowledge of the falsity of her reporting and the false light in which it placed the plaintiff.

167.   Defendant Robyn Kass-Gerji's reporting to investigative reporter defendant Laura Collins plaintiff had committed acts of harassment and terroristic threats towards the defendant Robyn Kass-Gerji, her family, and her pets presents the plaintiff in a false light which is highly offensive to the sensibilities of a reasonable person.

168.   Defendant Robyn Kass-Gerji is liable to the plaintiff for damages pursuant to the provisions of the Restatement (Second) of Torts, Section 652E.

169.   Defendant Robyn Kass-Gerji's presentation of the plaintiff in a false light was intentional.

170.   Defendant Robyn Kass-Gerji's presentation of the plaintiff in a false light was deliberate.

171.   Defendant Robyn Kass-Gerji's presentation of the plaintiff in a false light demonstrated a conscious disregard to the rights of the plaintiff.

172.   Defendant Robyn Kass-Gerji's presentation of the plaintiff in a false light demonstrated a reckless indifference to the welfare of the plaintiff.

173.   Defendant Robyn Kass-Gerji's presentation of the plaintiff in a false light was outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

174.   As a direct result of defendant Robyn Kass-Gerji's malicious, reckless, and intentional actions of presenting plaintiff in a false light, plaintiff has been caused to suffer those harms and losses aforementioned.

WHEREFORE, the plaintiff prays for judgment in her favor against defendant Robyn Kass-Gerji, jointly and severally, and the relief which follows:

I.      Plaintiff be awarded compensatory damages as proven at trial;

II.     Plaintiff be awarded punitive damages as proven at trial;

III.    Plaintiff be awarded interest and damages for prejudgment delay;

IV.    Plaintiff be awarded further relief as this Court may deem appropriate.

## COUNT IV
## DEFAMATION BY IMPLICATION
## <u>(Plaintiff v Laura Collins)</u>

175.   Plaintiff incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

176.   At all times material hereto, defendant Laura Collins was employed by defendant Daily Mail.

177.   Defendant Laura Collins authored the Daily Mail Article titled "Miss *Pennsylvania runner-up Victoria Vespico called rival Robyn Kass-Gerji 'piggy b\*\*\*h' and texted her: 'Are u ready to die now?' - before landing a job mentoring America's kids*" (hereinafter the "*Daily Mail Article*").

178.   Defendant Laura Collins facilitated the publishing and broadcasting of the Daily Mail Article.

179.   On July 7, 2024 at 11:40 a.m., the Daily Mail Article was distributed on the internet by defendant Daily Mail.

180.   At all times material hereto, defendant Laura Collins owed a duty to the plaintiff to exercise reasonable care to refrain from publishing statements about the plaintiff in a context which creates a defamatory implication.

181.   Defendant Laura Collins breached the duty of care owed to the plaintiff by authoring and facilitating the publication of the Daily Mail Article which falsely imputes the impression in the minds of the average persons, among whom it is

intended to circulate, the plaintiff committed crimes of harassment, terroristic threats, vandalism, and criminal mischief against a fellow competing pageant contestant.

182.   Defendant Laura Collins breached the duty of care owed to the plaintiff by authoring and facilitating the publication of the Daily Mail Article which falsely imputes the impression in the minds of the average persons, among whom it is intended to circulate, the plaintiff was a criminal.

183.   Defendant Laura Collins breached the duty of care owed to the plaintiff by authoring and facilitating the publication of the Daily Mail Article which falsely imputes the impression in the minds of the average persons, among whom it is intended to circulate, the plaintiff was violent, immoral, malicious, and unworthy to participate as a contestant in the Miss America Organization.

184.   Defendant Laura Collins breached the duty of care owed to the plaintiff by authoring and facilitating the publication of the Daily Mail Article which falsely imputes the impression in the minds of the average persons, among whom it is intended to circulate, the plaintiff was violent, immoral, malicious, and unworthy to be crowned as Miss Pennsylvania.

185.   Defendant Laura Collins breached the duty of care owed to the plaintiff by authoring and facilitating the publication of the Daily Mail Article which falsely imputes the impression in the minds of the average persons, among whom it is

intended to circulate, the plaintiff was violent, immoral, malicious, and unworthy to serve as a mentor for children.

186.   The Daily Mail Article presents a gross exaggeration and distorted impression of the plaintiff.

187.   Defendant Laura Collins' authoring and facilitation of the publication of the Daily Mail Article demonstrates a conscious disregard to the rights of the plaintiff and the false impression which the article conveyed about the plaintiff.

188.   Defendant Laura Collins' authoring and facilitation of the publication of the Daily Mail Article demonstrates a reckless indifference to the welfare of the plaintiff and the false impression which the article conveyed about the plaintiff.

189.   At all relevant times material hereto, defendant Laura Collins authored and facilitated publication of the Daily Mail Article with an intent and purpose to create a newsworthy article, capable of garnishing public interest and resulting profit, irrespective of the article's defamatory implication.

190.   Defendant Laura Collins was not privileged or otherwise justified in publishing, uttering, or otherwise broadcasting the aforementioned false information by implication about the plaintiff.

191.   Defendant Laura Collins is liable to the plaintiff for damages pursuant to the provisions of the Restatement (Second) of Torts, Section 570.

192.   Defendant Laura Collins is liable to the plaintiff for damages pursuant to the provisions of the Restatement (Second) of Torts, Section 571.

193.   Defendant Laura Collins is liable to the plaintiff for damages pursuant to the provisions of the Restatement (Second) of Torts, Section 573.

194.   Defendant Laura Collins is liable to the plaintiff for damages pursuant to the provisions of the Pennsylvania Uniform Single Publication Act, 42 Pa.C.S.A. §§ 8341 – 8345.

195.   Defendant Laura Collins' authoring and publication of statements about the plaintiff in a context which creates a defamatory implication was intentional.

196.   Defendant Laura Collins' authoring and publication of statements about the plaintiff in a context which creates a defamatory implication was deliberate.

197.   Defendant Laura Collins' authoring and publication of statements about the plaintiff in a context which creates a defamatory implication demonstrated a conscious disregard to the rights of the plaintiff.

198.   Defendant Laura Collins' authoring and publication of statements about the plaintiff in a context which creates a defamatory implication demonstrated a reckless indifference to the welfare of the plaintiff.

199.   Defendant Laura Collins' authoring and publication of statements about the plaintiff in a context which creates a defamatory implication is outrageous in

character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

200.   As a direct and proximate result of the defendant Laura Collins' aforementioned intentional, reckless, and/or malicious actions the plaintiff was caused to suffer that loss aforementioned.

WHEREFORE, the plaintiff prays for judgment in her favor against defendant Laura Collins, jointly and severally, and the relief which follows:

I.      Plaintiff be awarded compensatory damages as proven at trial;

II.     Plaintiff be awarded punitive damages as proven at trial;

III.    Plaintiff be awarded interest and damages for prejudgment delay;

IV.    Plaintiff be awarded further relief as this Court may deem appropriate.

## COUNT V
## DEFAMATION BY IMPLICATION
## VICARIOUS LIABILITY
## (Plaintiff v. Daily Mail On-Air, LLC)

201.   Plaintiff incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

202.   At all relevant times defendant Daily Mail employed defendant Laura Collins

to perform services and to act on its behalf, subject to its right of control of defendant Laura Collins.

41

203.   Defendant Daily Mail is liable to plaintiff for the wrongful conduct defendant Laura Collins performed in furthering the interests, activities, affairs, or business of defendant Daily Mail.

204.   Defendant Daily Mail liable to plaintiff pursuant to Section 213 of the Restatement (Second) of Agency.

205.   Defendant Daily Mail is liable to plaintiff pursuant to Section 317 of the Restatement (Second) of Torts.

206.   At all relevant times defendant Daily Mail was responsible for publishing, broadcasting, and distributing the aforementioned Daily Mail Article titled "Miss *Pennsylvania runner-up Victoria Vespico called rival Robyn Kass-Gerji 'piggy b***h' and texted her: 'Are u ready to die now?' - before landing a job mentoring America's kids*" (hereinafter the "*Daily Mail Article*").

207.   At all times material hereto, defendant Daily Mail owed a duty to the plaintiff to exercise reasonable care to refrain from publishing statements about the plaintiff in a context which creates a defamatory implication.

208.   Defendant Daily Mail breached the duty of care owed to the plaintiff by publishing the Daily Mail Article which falsely imputes the impression in the minds of the average persons, among whom it is intended to circulate, the plaintiff committed crimes of harassment, terroristic threats, vandalism and criminal mischief against a fellow competing pageant contestant.

209.   Defendant Daily Mail breached the duty of care owed to the plaintiff by publishing the online news which falsely imputes the impression in the minds of the average persons, among whom it is intended to circulate, the plaintiff was a criminal.

210.   Defendant Daily Mail breached the duty of care owed to the plaintiff by publishing the Daily Mail Article which falsely imputes the impression in the minds of the average persons, among whom it is intended to circulate, the plaintiff was violent, immoral, malicious, and unworthy to participate as a contestant in the Miss America Organization.

211.   Defendant Daily Mail breached the duty of care owed to the plaintiff by publishing the Daily Mail Article which falsely imputes the impression in the minds of the average persons, among whom it is intended to circulate, the plaintiff was violent, immoral, malicious, and unworthy to be crowned as Miss Pennsylvania.

212.   Defendant Daily Mail breached the duty of care owed to the plaintiff by publishing the Daily Mail Article which falsely imputes the impression in the minds of the average persons, among whom it is intended to circulate, the plaintiff was violent, immoral, malicious, and unworthy to serve as a mentor for children.

213.   The Daily Mail Article presents a gross exaggeration and distorted impression of the plaintiff.

214. Defendant Daily Mail's publishing, broadcasting, and distribution of the Daily Mail Article demonstrates a conscious disregard to the rights of the plaintiff and the false impression which the article conveyed about the plaintiff.

215. Defendant Daily Mail's publishing, broadcasting, and distribution of the Daily Mail Article demonstrates a reckless indifference to the welfare of the plaintiff and the false impression which the article conveyed about the plaintiff.

216. At all relevant times material hereto, defendant Daily Mail published, broadcasted, and distributed the Daily Mail Article with an intent and purpose to create a newsworthy article, capable of garnishing public interest and resulting profit, irrespective of the truthfulness of the publication.

217. At all relevant times material hereto, defendant Daily Mail published, broadcasted, and distributed the Daily Mail Article with an intent and purpose to create a newsworthy article, capable of garnishing public interest and resulting profit, irrespective of the article's defamatory implication.

218. Defendant Daily Mail was not privileged or otherwise justified in publishing, broadcasting, distributing, or otherwise uttering the aforementioned false information by implication about the plaintiff.

219. Defendant Daily Mail is liable to the plaintiff for damages pursuant to the provisions of the Restatement (Second) of Torts, Section 570.

220.   Defendant Daily Mail is liable to the plaintiff for damages pursuant to the provisions of the Restatement (Second) of Torts, Section 571.

221.   Defendant Daily Mail is liable to the plaintiff for damages pursuant to the provisions of the Restatement (Second) of Torts, Section 573.

222.   Defendant Daily Mail is liable to the plaintiff for damages pursuant to the provisions of the Pennsylvania Uniform Single Publication Act, 42 Pa.C.S.A. §§ 8341 – 8345.

223.   Defendant Daily Mail's publication, broadcasting, and distribution of statements about the plaintiff in a context which creates a defamatory implication was intentional.

224.   Defendant Daily Mail's publication, broadcasting, and distribution of statements about the plaintiff in a context which creates a defamatory implication was deliberate.

225.   Defendant Daily Mail's publication of statements about the plaintiff in a context which creates a defamatory implication demonstrated a conscious disregard to the rights of the plaintiff.

226.   Defendant Daily Mail's publication, broadcasting, and distribution of statements about the plaintiff in a context which creates a defamatory implication demonstrated a reckless indifference to the welfare of the plaintiff.

227.   Defendant Daily Mail's publication, broadcasting, and distribution of statements about the plaintiff in a context which creates a defamatory implication is outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

228.   As a direct and proximate result of the defendant Daily Mail's aforementioned intentional, reckless, and/or malicious actions the plaintiff was caused to suffer that loss aforementioned.

WHEREFORE, the plaintiff prays for judgment in her favor against defendant Daily Mail, jointly and severally, and the relief which follows:

I.      Plaintiff be awarded compensatory damages as proven at trial;

II.     Plaintiff be awarded punitive damages as proven at trial;

III.    Plaintiff be awarded interest and damages for prejudgment delay;

IV.     Plaintiff be awarded further relief as this Court may deem appropriate.

## COUNT VI
## PRESENTATION OF FALSE LIGHT
### (Plaintiff v Laura Collins)

229.   Plaintiff incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

230.   Defendant Laura Collins' authoring and facilitation of the publication of the aforementioned Daily Mail Article "Miss *Pennsylvania runner-up Victoria*

46

*Vespico called rival Robyn Kass-Gerji 'piggy b\*\*\*h' and texted her: 'Are u ready to die now?' - before landing a job mentoring America's kids*" falsely imputed the impression in the minds of the average persons, among whom it is intended to circulate, the plaintiff had committed acts of harassment and terroristic threats towards the defendant Robyn Kass-Gerji, her family, and her pets with knowledge of the falsity of her reporting and the false light in which it placed the plaintiff.

231.   Defendant Laura Collins' authoring and facilitation of the publication of the Daily Mail Article falsely imputed the impression in the minds of the average persons, among whom it is intended to circulate, the plaintiff had committed acts of harassment and terroristic threats towards the defendant Robyn Kass-Gerji, her family, and her pets presents the plaintiff in a false light which is highly offensive to the sensibilities of a reasonable person.

232.   Defendant Laura Collins is liable to the plaintiff for damages pursuant to the provisions of the Restatement (Second) of Torts, Section 652E.

233.   Defendant Laura Collins' presentation of the plaintiff in a false light was intentional.

234.   Defendant Laura Collins' presentation of the plaintiff in a false light was deliberate.

235.   Defendant Laura Collins' presentation of the plaintiff in a false light demonstrated a conscious disregard to the rights of the plaintiff.

236.    Defendant Laura Collins' presentation of the plaintiff in a false light demonstrated a reckless indifference to the welfare of the plaintiff.

237.    Defendant Laura Collins' presentation of the plaintiff in a false light was outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

238.    As a direct result of defendant Laura Collins' malicious, reckless, and intentional actions of presenting plaintiff in a false light, plaintiff has been caused to suffer those harms and losses aforementioned.

WHEREFORE, the plaintiff prays for judgment in her favor against defendant Laura Collins, jointly and severally, and the relief which follows:

I.      Plaintiff be awarded compensatory damages as proven at trial;

II.     Plaintiff be awarded punitive damages as proven at trial;

III.    Plaintiff be awarded interest and damages for prejudgment delay;

IV.     Plaintiff be awarded further relief as this Court may deem appropriate.

## COUNT VII
## PRESENTATION OF FALSE LIGHT
## VICARIOUS LIABIILITY
## <u>(Plaintiff v. Daily Mail On-Air, LLC)</u>

239.    Plaintiff incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

240.   Defendant Daily Mail's publication, broadcasting, and distribution of the Daily Mail Article titled "Miss *Pennsylvania runner-up Victoria Vespico called rival Robyn Kass-Gerji 'piggy b\*\*\*h' and texted her: 'Are u ready to die now?' - before landing a job mentoring  America's kids*" falsely imputed the impression in the minds of the average persons, among whom it is intended to circulate, the plaintiff had committed acts of harassment and terroristic threats towards the defendant Robyn Kass-Gerji, her family, and her pets with knowledge of the falsity of her reporting and the false light in which it placed the plaintiff.

241.   Defendant Daily Mail's publication, broadcasting, and distribution of the Daily Mail Article falsely imputed the impression in the minds of the average persons, among whom it is intended to circulate, the plaintiff had committed acts of harassment and terroristic threats towards the defendant Robyn Kass-Gerji, her family, and her pets presents the plaintiff in a false light which is highly offensive to the sensibilities of a reasonable person.

242.   Defendant Daily Mail is liable to the plaintiff for damages pursuant to the provisions of the Restatement (Second) of Torts, Section 652E.

243.   Defendant Daily Mail's presentation of the plaintiff in a false light was intentional.

244.   Defendant Daily Mail's presentation of the plaintiff in a false light was deliberate.

245.   Defendant Daily Mail's presentation of the plaintiff in a false light demonstrated a conscious disregard to the rights of the plaintiff.

246.   Defendant Daily Mail's presentation of the plaintiff in a false light demonstrated a reckless indifference to the welfare of the plaintiff.

247.   Defendant Daily Mail's presentation of the plaintiff in a false light was outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

248.   As a direct result of defendant Daily Mail's malicious, reckless, and intentional actions of presenting plaintiff in a false light, plaintiff has been caused to suffer those harms and losses aforementioned.

WHEREFORE, the plaintiff prays for judgment in her favor against defendant Daily Mail, jointly and severally, and the relief which follows:

I.      Plaintiff be awarded compensatory damages as proven at trial;

II.     Plaintiff be awarded punitive damages as proven at trial;

III.    Plaintiff be awarded interest and damages for prejudgment delay;

IV.    Plaintiff be awarded further relief as this Court may deem appropriate.

## COUNT VIII
## CORPORATE NEGLIGENCE
### (Plaintiff v. Daily Mail On-Air, LLC)

249.   The plaintiff incorporates by reference the previous paragraphs of the Amended (Second) Complaint as if set forth fully herein.

250.   Defendant Daily Mail owed a common law duty of care to the plaintiff to select and retain only competent investigative reporters.

251.   Defendant Daily Mail owed a common law duty of care to the plaintiff to oversee all investigative reporters who write news stories, reviews, or commentary for print, broadcast, or other media on behalf of Daily Mail.

252.   Defendant Daily Mail owed a common law duty of care to the plaintiff to formulate, adopt and enforce adequate rules and policies to protect against investigative reporters from writing news stories for print which defamed or placed the subject of the new stories in a false light.

253.   Defendant Daily Mail breached the duties of care owed to plaintiff in the following, but not limited, respects:

(a)    Failed to select and retain only competent investigative reporters;

(b)    Failed to operate under rules and policies sufficient to protect against investigative reporters from writing news stories for print which defamed or placed the subject of the new stories in a false light;

(c)    Failed to select and retain investigative reporters who complied with procedures and protocols sufficient to protect against investigative reporters from writing news stories for print which defamed or placed the subject of the new stories in a false light;

(d)    Failed to adequately train against investigative reporters to sufficiently protect against investigative reporters' writing news stories for print which defamed or placed the subject of the new stories in a false light;

(e)    Failed to sufficiently oversee the investigative reporters employed by or wrote news stories for print on behalf of Daily Mail;

254.    At all material times relevant hereto defendant Daily Mail had actual or constructive knowledge of the insufficient attention devoted to the training of its investigative reporters to protect against investigative reporters from writing news stories for print which defamed or placed the subject of the new stories in a false light.

255.    At all material times relevant hereto Daily Mail had actual or constructive knowledge of the insufficient attention it devoted to emphasizing upon its investigative reporters the risks associated with failing to protect against writing news stories for print which defamed or placed the subject of the new stories in a false light.

256.   At all material times relevant hereto defendant Daily Mail had actual or constructive knowledge that operation of its publishing and broadcasting services with insufficient attention devoted to take appropriate action to protect against writing news stories for print which defamed or placed the subject of the new stories in a false light would inevitably increase the likelihood that subjects of its news articles, such as the plaintiff, would suffer harm.

257.   At all material times relevant hereto defendant Daily Mail had actual or constructive knowledge of the defect of procedures and policies under which it operated which created the harm suffered by plaintiff and allowed the conduct that resulted in the harm.

258.   At all material times relevant hereto defendant Daily Mail acted with a reckless indifference to the rights of the plaintiff.

259.   As a direct and proximate result of defendant Daily Mail's negligent, careless, and reckless acts, omissions, or failures to act the plaintiff was caused to suffer that damage and harm aforementioned.

WHEREFORE, the plaintiff prays for judgment in her favor against defendant Daily Mail, jointly and severally, and the relief which follows:

I.      Plaintiff be awarded compensatory damages as proven at trial;

II.     Plaintiff be awarded punitive damages as proven at trial;

III.    Plaintiff be awarded interest and damages for prejudgment delay;

IV.    Plaintiff be awarded further relief as this Court may deem appropriate.

Respectfully submitted,

By:    */s/ Steven F. Marino*
Steven F. Marino, Esquire
PA Attorney I.D. No.  53034
Joseph Auddino, Esquire
PA Attorney I.D. No.  316752
MARINO ASSOCIATES
301 Wharton Street
Philadelphia, PA 19147
Telephone:  (215) 462-3200
Telecopier:  (215) 462-4763
smarino@marinoassociates.net
jauddino@marinoassociates.net

*Attorneys for Plaintiff*

Dated:  March 20, 2025