## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **VICTORIA VESPICO,** | : | **No. 3:25cv512** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ROBYN KASS-GERJI,** | : | |
| **Defendant** | : | |

## <u>MEMORANDUM</u>

*I swear, if you don't drop out of Miss Pennsylvania, I will come to your home and set it on fire. I don't even care if you or your mom are inside. I actually hope you are. You both deserve to die. I am going to kill you, Robyn. I don't understand why you don't get that. I will burn you. You will die.*[1]

Each June, the Miss Pennsylvania competition is held in York at the Appell Center for the Performing Arts. The winner goes on to represent the Commonwealth in the Miss America pageant. Leading up to the 2024 competition, what may have started as a backstage rivalry escalated into something uglier.

---

[1] (Doc. 10-2, Def. Ex. A, Transcript of Anti-Stalking Order Hearing, at 42:13-21, <u>Kass-Gerji v. Vespico</u>, 2024 ASO 437 (D.C. Super. Ct. 05/29/2024)) ("ASO H.T. 05/29/2024").

According to Defendant Robyn Kass-Gerji, it was the plaintiff, Victoria Vespico, whose conduct went beyond the pale. Kass-Gerji claims she was subjected to months of harassing text messages and threats against her life. According to Kass-Gerji, Vespico also threatened to kill her mother, her boyfriend, and her dog.

Vespico tells a very different story. She insists that she never sent a single message and paints Kass-Gerji as the true aggressor. That is, Vespico describes Kass-Gerji as someone willing to fabricate evidence, file a fraudulent petition for a protection order, and lie under oath.

Days before the contestants took the stage at the Miss Pennsylvania pageant, a hearing was convened—not before a pageant director, but a judge of the Superior Court of the District of Columbia. The subject matter was credibility, not congeniality.

After listening to both sides over the course of a two-day hearing, the judge ruled in favor of Kass-Gerji and issued an anti-stalking order ("ASO") against Vespico. The judge concluded that Vespico was not believable and that she had sent the threatening texts. He determined that Kass-Gerji was not lying or fabricating evidence.

Vespico, however, stands firm. She points to Kass-Gerji's conduct after obtaining the ASO as signs that the defendant made it all up to get attention—

withdrawing from Miss Pennsylvania, sitting for a TV interview with a local news affiliate during the pageant, and sharing details about the texts and legal proceedings with a British tabloid journalist.

The tabloid involved was the *Daily Mail*. After the curtain fell on the 2024 Miss Pennsylvania pageant, the *Mail* published an article: "*Miss Pennsylvania runner-up Victoria Vespico called rival Robyn Kass-Gerji 'piggy b\*\*\*h and texted her: 'Are u ready to die now?' – before landing a job mentoring America's kids.*" The *Mail* used full names, referenced body shaming and death threats, and hinted at children being at risk, and that was only the headline.

After seeing her image run through the filter of a British tabloid, Vespico filed this abuse of process, defamation, and false light lawsuit against Kass-Gerji, *Daily Mail*, and Laura Collins, the reporter who authored the article. Following the voluntary dismissal of the *Mail* and Collins, the action now proceeds only against Kass-Gerji.

Before the court is the defendant's motion to dismiss for failure to state a claim. The motion will be granted. The D.C. Superior Court's findings, detailed below, bear directly on that determination. Because Kass-Gerji also seeks attorneys' fees, the court also addresses Pennsylvania's Anti-SLAPP statute.

## Background

Some additional details are necessary to address Vespico's claims and Kass-Gerji's arguments in support of dismissal.[2]  Vespico and Kass-Gerji were both participants in the Miss America Organization with the Pennsylvania franchise, the Miss Pennsylvania Scholarship Foundation. (Doc. 1, Compl. ¶¶ 12–21).  Both were slated to appear at the 2024 state competition in York.  Id. ¶ 22.

According to court documents, Kass-Gerji began receiving threatening texts in March 2024.[3]  Id. ¶ 46.  The messages continued into April and Kass-Gerji alleged that she received texts on April 1, 3, 4, 9, 13–15, and 25, 2024.  Id.

In April 2024, Kass-Gerji reported to the Findlay Township Police Department in Allegheny County that she received harassing, intimidating, and threatening text messages from the plaintiff.  Id. ¶ 35.  Vespico contends that this

---

[2] These brief background facts are derived from plaintiff's complaint.  At this stage of the proceedings, the court must accept all factual allegations in the amended complaint as true. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  This memorandum also references portions of the ASO hearing transcripts and final order, which were not attached to the complaint.  In ruling on the motion to dismiss, the court may consider the transcripts and court order as matters of public record and as documents integral to or explicitly relied upon in the complaint. See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (citations omitted).

[3] At the ASO hearing, Kass-Gerji testified that she began receiving messages after competing at the Miss York and Miss Susquehanna Valley competition earlier in 2024. (Doc. 10-2, ASO H.T. 05/29/2024, 22:20–23:4).  Messages from March 2024 included a text stating, in part, "Just give up. Do you need more incentive than being murdered? How about I come to your home and burn it down, bitch? I will set you and your house on fire. Pennsylvania doesn't want you. No one wants you." Id., 37:17-23.

4

was a false report. Id. According to the complaint, the Findlay Township PD determined that there was insufficient evidence to initiate criminal proceedings.[4] Id. ¶ 38.

Kass-Gerji apparently resided in the District of Columbia during the relevant period, not in Allegheny County. Id. ¶¶ 23–26. On May 1, 2024, Kass-Gerji filed a verified petition and affidavit for an anti-stalking order in the D.C. Superior Court and obtained ex parte temporary relief.[5] Id. ¶¶ 39–40. The petition accused Vespico of texting threats of physical harm and violence. Id. ¶¶ 41–42. Additional messages followed later that day and on May 8 and 10, 2024.[6] Id. ¶ 46. The temporary ASO was extended through May 29, 2024. Id. ¶¶ 44–47.

---

[4] During her testimony at the ASO hearing, Kass-Gerji referenced several text messages she received after she contacted the police, including: "*You'll never win this. What are you going to do now? The cops can't help you. This is all your fault. You should have just killed yourself. Go die.*" (Doc. 10-2, H.T. 05/29/2024, 72:11-15).

[5] Pennsylvania's Protection from Abuse Act requires that parties be family or household members, sexual or intimate partners, or persons who share biological parenthood for a protection order to be entered. 23 PA. CONS. STAT. § 6102(a). D.C.'s Anti-Stalking Act does not. D.C. CODE § 16-1062.

[6] Kass-Gerji referenced some of the messages she received after obtaining the temporary ASO. Defendant testified that she received messages like, "*You're dead. You're trying to serve me with what? Back the fuck off, bitch. I will literally fucking kill you.*" (Doc. 10-2, H.T. 05/29/2024, 85:11-16). According to Kass-Gerji's testimony, she also received a message stating, "*You fucking bitch. You filed for a restraining order. What do you think that will do? Nothing. You are dead.*" Id., 87:3-13. Furthermore, Kass-Gerji testified that she did not receive any further threatening text messages after Vespico was served with the petition and temporary ASO on May 13, 2024. Id., 88:15-19.

A two-day hearing was conducted before the Honorable John McCabe, an associate judge of the D.C. Superior Court, on May 29 and June 5, 2024. (Docs. 10-2 and 10-3). The parties and other witnesses testified. Both sides were represented by counsel. Witnesses were subject to cross examination.

After weighing the evidence, Judge McCabe granted Kass-Gerji's petition. He also made several factual findings. He determined that Vespico sent harassing and threatening text messages to Kass-Gerji by a preponderance of the evidence. (Doc. 10-3, Def. Ex. B, Transcript of Anti-Stalking Order Hearing, at 106:18-21; 113:11-12, Kass-Gerji v. Vespico, 2024 ASO 437 (D.C. Super. Ct. 06/05/2024)) ("ASO H.T. 06/05/2024"). He also found no evidence that Kass-Gerji had fabricated the texts. Id., 109:11-19, 111:12-18.

Accordingly, the D.C. court entered an ASO to protect Kass-Gerji from stalking. (Doc. 10-4, Def. Ex. C). The order directed Vespico: (1) not to commit or threaten to commit any criminal offenses against the defendant, her family, or animals; (2) remain 100 feet from the defendant, her home, person, workplace, vehicle, her boyfriend and mother; and (3) remain 20 feet away from defendant if they participated in the same pageant. Id. In other words, the ASO did not prevent both parties from participating in the 2024 Miss Pennsylvania competition.

6

The 2024 Miss Pennsylvania pageant was a three-day event, from June 13 to June 15. (Doc. 1, Compl. ¶ 27). Kass-Gerji, however, withdrew at some point prior to the competition. Id. ¶ 87. Instead of participating, she sat for an interview with Jasmine Brooks, a broadcast journalist with CBS 21 Harrisburg. Id. ¶¶ 78–80. During a news broadcast, on June 14, 2024, Kass-Gerji stated that she dropped out of the competition as the result of the death threats. Id. ¶ 87.

Vespico did not win the 2024 Miss Pennsylvania pageant. That did not stop the story from lingering in the news cycle. Over the next month, various media outlets reported on Kass-Gerji's claims and the ASO proceedings, including the *Daily Mail*. Id. ¶ 90. Kass-Gerji was interviewed by Laura Collins, an investigative reporter for the tabloid. Id. ¶ 92. According to Vespico, Kass-Gerji shared screen shots of the text messages and a copy of the ASO with the reporter. Id. ¶¶ 93–100. The *Daily Mail* referenced those messages in the article, published on July 7, 2024. Id. ¶¶ 101–03.

As alleged by plaintiff in her complaint, Kass-Gerji falsely reported to Collins that Vespico sent her the following messages dated April 1, 3, and 9, 2024:

1. *I swear if you leave DC I will ruin your life*
2. *I will come to DC and set your house on fire and what* [sic] *you scream as your stupid dogs die*
3. *It'll be so funny*

7

4. *Maybe I'll even take care of that awful boyfriend of yours*

5. *It's not like either of you will be missed*

6. *I can't wait to see the life leave your eyes as I crush your whole world*

7. *You will kill yourself*

8. *Or I will kill you*

9. *Hey piggy bitch*

10. *Are u ready to die now?*

11. *Just so you know no one is going to protect you.*

12. *No one believes you.*

13. *I get [sic] that ugly boyfriend of yours doesn't even believe you*

14. *Have you showed him these messages*

15. *Did you tell him that when I kill you that I'm going to kill him too*

16. *And your stupid dogs*

17. *If you come back to PA I will come down to your house and DC and set your house on fire*

18. *I will first stab your boyfriend then set the house on fire so everyone thinks you did it*

19. *God you are such a piece of shit*

20. *I can't believe you're even trying to compete*

21. *You should just kill yourself*

22. *Unless you want me to do it for you*

23. *How should I do it*

24. *Knife*

25. *Hit you with a car*

26. *What's slower and more painful*

27. *I'll think about it*

28. *If you compete at miss Pa this year I'll do it then*

8

Id. ¶¶ 96–99.

Vespico categorically denies sending these messages. In this action premised upon the court's diversity jurisdiction, Vespico accuses Kass-Gerji of misusing the legal system and spreading false information through the media. Specifically, this action involves three state law claims against the defendant: Count I – abuse of process; Count II – defamation per se; and Count III – presentation of false light.[7] As discussed below, this action will be dismissed for failure to state a claim.

**Standard of Review**

Kass-Gerji has filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief which is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when factual content is pled which allows the court to draw the reasonable

---

[7] Federal diversity jurisdiction requires complete diversity of citizenship between the parties and an amount in controversy exceeding $75,000, exclusive of interest and costs. Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373 (1978). According to the complaint, plaintiff is a citizen of the Commonwealth of Pennsylvania, the defendant is a citizen of the State of Maryland, and the amount in controversy exceeds $75,000. Id. ¶¶ 6–7. The court thus exercises subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, the diversity jurisdiction statute. A federal court sitting in diversity must apply state substantive law and federal procedural law. See Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

9

inference that the defendant is liable for the misconduct alleged. Id. (citing Twombly, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). While the court must accept all well-pled factual allegations as true and draw all inferences in the plaintiff's favor, Phillips, 515 F.3d at 221, it need not credit "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," Twombly, 550 U.S. at 555.

In deciding the motion, the court may consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents. Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). The court may also consider a document integral to or explicitly relied upon in the complaint without converting the motion to dismiss into one for summary judgment. Schmidt, 770 F.3d at 249 (3d Cir. 2014) (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (cleaned up). The court takes judicial notice of the prior proceedings between the parties, the hearing transcripts, and the ASO entered therein. [8]

---

[8] Plaintiff's brief in opposition requests that the motion to dismiss be converted into a motion for summary judgment. (See Doc. 19 at 5–6). That request is denied. The documents from the ASO proceedings supplied by Kass-Gerji in her brief in support of dismissal are properly

10

## Analysis

The proceedings in the D.C. Superior Court are dispositive. Vespico cannot state a claim for abuse of process, defamation per se, or false light in this action.

### 1. Abuse of Process

According to Vespico, the filing of the ASO petition constituted abuse of process under the law of the District of Columbia.[9] The applicable law does not recognize recovery for the way in which Kass-Gerji used the ASO process.

In the District of Columbia, abuse of process occurs when "process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do." Morowitz v. Marvel, 423 A.2d 196, 198 (D.C. 1980) (quoting Jacobson v. Thrifty Paper Boxes, Inc., 230 A.2d 710, 711 (D.C. 1967). Proof of two elements is required: 1) the existence of an ulterior motive; and 2) a perversion of the judicial process and achievement of some end not contemplated in the regular

---

considered at this stage. An affidavit supplied by the plaintiff in opposition to the motion to dismiss is not.

[9] The parties agree that the law of the District of Columbia applies to Vespico's abuse of process claim. (Doc. 15, Def. Br. in Supp. at ECF p. 20 n.3; Doc. 19, Pl. Br. in Opp. at 22, n. 35 (citing D.C. law)). The court will assume that it does.

prosecution of the charge. Id. (citing Hall v. Hollywood Credit Clothing Co., 147 A.2d 866, 868 (D.C. 1959)).

The District, however, follows what has been acknowledged to be the minority rule when it comes to abuse of process claims. Harrison v. Howard Univ., 846 F. Supp. 1, 2 (D.D.C. 1993) (applying D.C. law), aff'd, 48 F.3d 562 (D.C. Cir. 1995). That is:

> an application to the processes of the law, or of government generally, even if accompanied by *mens rea*, is not actionable as an abuse of process unless the process itself is misused. "No matter what ulterior motive may have prompted it," Morowitz, 423 A.2d at 198…one who invokes the legal process to obtain such relief as it offers commits no abuse of process. If the relief is within the power of the court or agency to grant, and is warranted by the merits, the process has been lawfully employed.

Id. at 2–3.

As explained, adherence to this rule in the District of Columbia encourages "citizens with grievances to resort to the legal process, even at the cost of tolerating mean-spirited appeals to that process by which the petitioner hopes to gain something more than merely the relief allowed." Id. at 2 (citing Bown v. Hamilton, 601 A.2d 1074, 1080 (D.C. 1992)); see also Morowitz, 423 A.2d at 197–98 ("In an effort to avoid infringing upon the right of the public to utilize our courts, we are cautious not to adopt rules which will have a chilling and inhibitory effect on would-be litigants of justiciable issues.").

12

Vespico alleges that Kass-Gerji filed the ASO petition with ulterior motives to: 1) paint herself as a victim of abuse to further her victim advocacy platform; 2) gain media attention; 3) damage the plaintiff's reputation; 4) force plaintiff to withdraw from the 2024 Miss Pennsylvania pageant; and 5) gain a competitive advantage in the competition. (Doc. 1, Compl. ¶¶ 112–116). Even accepting these allegations as the truth (and ignoring that Kass-Gerji withdrew from the competition), they are insufficient under D.C. law. See Bown 601 A.2d at 1080; Morowitz, 423 A.2d at 198–99; see also Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Loc. Union 639, 883 F.2d 132, 137–38 (D.C. Cir. 1989), on reh'g in part, 913 F.2d 948 (D.C. Cir. 1990) ("Plaintiff must demonstrate not only ulterior motive, but success in achieving illegitimate ends with resulting injury.").

Here, Kass-Gerji petitioned for an anti-stalking order under a statute covering the District of Columbia. D.C. CODE § 16–1062(a). According to that statute, a judicial officer may issue an ASO if they find by a preponderance of the evidence that the respondent stalked the petitioner at least once within the 90 days prior to the petition. Id., § 16–1064(c). A judge of the D.C. Superior Court held a hearing and determined that Kass-Gerji was entitled to an ASO, that is, he concluded that Vespico stalked Kass-Gerji by sending the text messages.[10] The

---

[10] "Stalked" is defined as any conduct described by a separate provision of the D.C. Code. D.C. Code § 16-1061(7). This definition will be discussed later in the memorandum.

13

court then issued an order with stay-away provisions—relief that the ASO statute authorizes. Id. § 16–1064(c)(1)–(9).

Therefore, in this case, the ASO process was used for its intended purpose and achieved a result it was designed to produce. Since Kass-Gerji used the ASO framework as designed, the abuse of process claim cannot move forward under D.C. law even if the defendant used those proceedings for other reasons as alleged. See Rockwell Cap. Partners, Inc. v. CD Int'l Enters., Inc., 311 F. Supp. 3d 52, 55 (D.D.C. 2018) (applying D.C. law) (requiring threats or extortionate conduct). An "unpure heart" is not enough. Spiller v. D.C., 362 F. Supp. 3d 1, 6 (D.D.C. 2019) (citing Nader v. Democratic Nat'l Comm., 567 F.3d 692, 698 (D.C. Cir. 2009) (applying D.C. law)). Vespico's abuse of process claim will thus be dismissed.

### 2. Defamation Per Se and False Light

Count II advances a claim for defamation per se. Count III advances a claim for presentation of false light. These two claims target Kass-Gerji's media statements after entry of the ASO.

On the defamation claim, Vespico has the burden of proving: (1) "the defamatory character" of Kass-Gerji's communications; (2) its publication by the defendant; (3) its application to Vespico; (4) the recipient's understanding of its defamatory meaning; (5) the recipient's understanding "of it as intended to be

14

applied to" Vespico; (6) special harm resulting to Vespico from its publication; and (7) the abuse of a conditionally privileged occasion by the defendants. See Menkowitz v. Peerless Publications, Inc., 218 A.3d 797, 800 n.6 (Pa. 2019) (citing 42 PA. CONS. STAT. § 8343(a)). Under the Restatement (Second) of Torts, defamation per se occurs "when the statement ascribes to the plaintiff any of the following: commission of a criminal offense, a loathsome disease, serious sexual misconduct, or conduct or characteristics that adversely affect the plaintiff's fitness to properly conduct his profession, trade or business." Krolczyk v. Goddard Sys., Inc., 164 A.3d 521, 531 (Pa. Super. Ct. 2017) (citing RESTATEMENT (SECOND) OF TORTS § 570).

The false light claim requires that: (1) the defendant gave publicity to a matter concerning the plaintiff; (2) the publicity placed the plaintiff before the public in a false light; (3) the false light would be highly offensive to a reasonable person; and (4) the defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized matter in which the other would be placed. Vivian v. Blank Rome, LLP, 318 A.3d 890, 903 (Pa. Super. Ct. 2024), app. denied, 332 A.3d 1180 (Pa. 2025) (citing Meyers v. Certified Guar. Co., LLC, 221 A.3d 662, 674 (2019); RESTATEMENT (SECOND) OF TORTS, § 652E). In contrast to a claim for defamation, false light claims offer redress "not merely for the publication of matters that are provably false, but also for that, although true, are selectively

15

publicized in a manner creating a false impression." Id. (quoting Myers, 221 A.3d at 674 (citation omitted)).  However, "[a]s with defamation, the elements of a claim for false light include knowledge of, or reckless disregard for, the falsity of a publication." Coleman v. Ogden Newspapers, Inc., 142 A.3d 898, 905 (Pa. Super. Ct. 2016)).

Accordingly, the court will address the defamation and false light claims together because the same overarching issue is dispositive, whether Vespico may relitigate the truth of the conduct that Kass-Gerji described in the ASO proceedings and then in the media statements following the hearing.  Kass-Gerji argues that the doctrine of collateral estoppel or issue preclusion applies to these claims. [11]  The court agrees.

_____

[11] In the Third Circuit, affirmative defenses like collateral estoppel may be raised in a motion to dismiss if apparent on the face of the complaint. See Salaam v. Trump, 777 F. Supp. 3d 414, 427 (E.D. Pa. 2025) (citing Schmidt, 770 F.3d at 249; Rycoline Prods., Inc. v. C & W Unlimited, 109 F.3d 883, 886-87 (3d Cir. 1997)).  Vespico's complaint refers to text messages, a prior hearing about those text messages involving the same two parties, and a court order entered after a hearing where those text messages were discussed during the parties' testimony and entered into evidence.  Therefore, Kass-Gerji's collateral estoppel defense is discernable from the plaintiff's allegations.

Furthermore, the parties agree that Pennsylvania law applies to Vespico's defamation and false light claims.  The court will therefore apply Pennsylvania law to those claims.  The parties also agree that D.C. preclusion law applies. (Doc. 15, Def. Br. in Supp. at ECF p. 15; Doc. 19, Pl. Br. in Opp. at 16–17 (citing District of D.C. and D.C. Circuit opinions)).  Because the prior adjudication was rendered by the D.C. Superior Court, the preclusive effect of that judgment is governed by D.C. law. See Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985) (discussing 28 U.S.C. § 1738); see also Greenway Ctr., Inc. v. Essex Ins. Co., 475 F.3d 139, 147 (3d Cir. 2007) (looking to the law of the adjudicating state to determine the preclusive effect of a determination on an issue)).

Collateral estoppel:

> renders conclusive in the same or a subsequent action [the] determination of an issue of fact or law when (1) the issue is actually litigated and (2) determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by the parties or their privies; (4) under circumstances where the determination was essential to the judgment, and not merely dictum.

Davis v. Davis, 663 A.2d 499, 501 (D.C. 1995) (citing Washington Med. Ctr., Inc. v. Holle, 573 A.2d 1269, 1283 (D.C. 1990) (additional citations omitted).

*An Actually Litigated Issue* – The actually litigated element looks to whether the issue of fact or law had previously been submitted for a determination by a court. See id. The central issue underlying plaintiff's defamation and false light claims is whether defendant's statements about harassment and threats from the text messages were false. This was addressed in Washington D.C. There, the court concluded by a preponderance of evidence that Vespico engaged in conduct constituting stalking under D.C. law. To do so, the D.C. Superior Court had to assess the theory Vespico advances in this case—that Kass-Gerji fabricated the texts and lied about them. The court also had to resolve conflicts in the testimony that Vespico threatened Kass-Gerji in person at a Miss Pennsylvania orientation session.

The D.C. statute defining stalking provides that it is unlawful for a person to purposefully engage in a course of conduct directed at a specific individual with the intent to cause that individual to: (A) fear for her safety or the safety of

17

another person; (B) feel seriously alarmed, disturbed, or frightened; or (C) suffer emotional distress. D.C. CODE § 22–3133(a)(1). It is also against the statute to knowingly or with a should-have-known state of mind engage in a course of conduct designed to cause an individual to fear, feel, or suffer in those manners. Id. § 22-3133(a)(2)–(3). Under the statute, "to engage in a course of conduct" means "directly or indirectly, or through one or more third persons, in person or by any means, on 2 or more occasions to: [f]ollow, monitor, place under surveillance, threaten, or communicate to or about another individual[.]" Id., § 22-3122(8)(A).

Upon review of the allegations in the complaint and the transcript from the ASO proceedings, the D.C. Superior Court determined that Vespico violated the stalking statute by engaging in the very harassment and threats that Kass-Gerji later described to the media, which are the alleged false statements in the complaint under review. What follows are portions of Judge McCabe's statement of reasons for entering the ASO:

> I think it's not a question of whether the conduct meets the legal description of stalking. It's whether Ms. Kass-Gerji has proved by a preponderance of the evidence that the threatening messages were in fact sent by Ms. Vespico.
>
> …
>
> And so I start with the fact that these are from a number that clearly is a phone number that Ms. Vespico has used. But also the content of the messages gives details about

18

the beauty pageants and so forth that, you know, obviously both Ms. Vespico and Ms. Kass-Gerji would know about.

But a lot of the details seem to be ones that not anyone else would necessarily know about, such as the details about the police being called.

...

And then on May 8th, Exhibit 14. This is at a time after there had been an attempt at service. And the message is, you're trying to serve me with what? And then on May 10th, Exhibit 16 is at 8:03 a.m., which is about 20 minutes after Ms. Casey served the papers. There's a text message saying, you filed for a restraining order.

...

So sometime later on May 10th is when a judge signed an anti-stalking order, and that was served on Ms. Vespico on May 13th, as Ms. Casey testified. And no threatening texts. There was no evidence of any threatening text after that, which again, would seem consistent with Ms. Vespico knowing that she's on notice now that she's facing possible criminal charges for violating a temporary anti-stalking order.

...

But in the Court's view, in this case, the only person who really could've sort of framed Ms. Vespico would've been Ms. Kass-Gerji herself. I mean, just the amount of detail of things like the service, you know, unless -- it's just hard to imagine who else possibly could've had this type of information to make this up as a way to sort of frame Ms. Vespico. But you know, there isn't any evidence of that, that Ms. Kass-Gerji in some way manufactured evidence or made this up.

...

19

[I]f Ms. Kass-Gerji was really out to get Ms. Vespico, presumably she would have pushed this more with the police, you know, as opposed to just an anti-stalking order, which, of course, you know, I'm sure can have consequences for anyone, but certainly someone like Ms. Vespico, who wants to participate in, you know, beauty contests and pageants. And you know, I don't know what exactly will happen. But I certainly believe that it's possible it'll interfere with her ability to do that.

But for all of the reasons that I have indicated, I do find that Ms. Vespico is the one who sent the text messages that were Exhibits 1 through 8, 10 through 14, and 16; and also that she made the in-person threat on April 13th. And I guess the main reason for that is I just, you know, obviously I believe her, that she received these messages and didn't manufacture them. And you know, I don't believe Ms. Vespico when she says that she didn't send these texts. And so I also think it would be more obvious that she'd be the one not to testify truthfully about the April 13th threat.

…

And I do make those logical inferences based upon the screenshots of the photograph -- the screenshots of the text messages from Ms. Kass-Gerji's phone, as well as all the content of what was in the text, is what leads me to conclude that Ms. Vespico is the person who, sadly, typed those horribly threatening comments to Ms. Kass-Gerji.

(Doc. 10-3, ASO H.T. 06/05/2024, 105:14-18; 107:10-18; 108:5-10; 109:11-19; 110:21–111:17; 113:7-12).

Consequently, the truth of whether Vespico sent threatening or intimidating texts to Kass-Gerji has already been litigated and those findings were critical to the entry of the ASO by the D.C. Superior Court.

20

*Determined by a Valid, Final Judgment on the Merits* – As discussed above, a judicial officer may issue an ASO only upon finding by a preponderance of the evidence that the respondent stalked the petitioner. D.C. CODE § 16–1064(c). ASO orders are appealable. Id., § 16–1064(f). As it stands, the order issued by Judge McCabe has not been vacated, modified, or reversed on appeal; thus, it constitutes a final merits-based judicial determination. See Davis, 663 A.2d at 502–04.

*Full and Fair Opportunity to Litigate* – Vespico appeared at the ASO hearing, was represented by counsel, and had the opportunity to call witnesses, present evidence, and cross-examine Kass-Gerji about her theory that the text messages were fabricated. Vespico also had the opportunity to litigate her theory that the text messages did not come from her phone or from a person acting on her behalf. Having contested the truth about the matter fully and lost on the merits, Vespico is attempting to relitigate the same factual determinations through different causes of action in a different forum.

*Essential to the Judgment* – Finally, for collateral estoppel to apply, the previous determinations cannot be incidental dictum or an alternative holding. Judge McCabe's finding that Vespico engaged in stalking—including the harassment and threats defendant later described to the media—was necessary to enter the order, see D.C. CODE § 16–1064(c), as were determinations related

21

to whether Vespico intended to cause Kass-Gerji to fear for her safety or the safety of another person, feel seriously alarmed, disturbed, or frightened, or suffer emotional distress, see id. §§ 22–3132(8)(A), 22–3133.  Determinations about the sender of the text messages were essential to the judgment, as was the veracity of an in-person threat. See Holle, 573 A.2d at 1283.

Therefore, because all four elements of D.C.'s collateral estoppel doctrine are met, the D.C. Superior Court's determination that Vespico engaged in the harassment and threats that Kass-Gerji described to the media is conclusive and may not be relitigated. 28 U.S.C. § 1738.  As for the claim for defamation per se, truth is an absolute defense under Pennsylvania law regardless of the per se characterization. 42 PA. CONS. STAT. § 8343(b)(1). The findings of the D.C. Superior Court establish the truth of Kass-Gerji's statements, and thus Vespico cannot meet her burden of proving falsity. 42 PA. CONS. STAT. § 8343(a)(7).  As for the false light claim, the same preclusive findings from the D.C. Superior Court foreclose Vespico's assertions that Kass-Gerji's statements placed her before the public in a false light.  Under Pennsylvania law, a false light claim cannot be sustained through true statements of fact and statements of opinion that did not imply the existence of undisclosed false factual assertions. Vivian, 318 A.3d at 904.  Describing conduct adjudicated by a court to have occurred does not create a false light.

22

Vespico's picayune arguments cannot save her case. Specifically, the plaintiff points to one paragraph of her complaint (out of 259) to argue that her defamation and false light claims should move forward to discovery despite all the other statements impacted by collateral estoppel. That is, Vespico alleges that Kass-Gerji falsely reported to the *Daily Mail* that her car was vandalized by the plaintiff on the eve of the 2024 Miss Pennsylvania Scholarship Competition. (Doc. 1, Compl. ¶ 94). Judge McCabe could not have ruled on the truth of that allegation since the ASO hearing concluded the week or so prior to the pageant. Understandably, the collateral estoppel analysis cannot extend to this particular statement. This does not mean that Vespico's defamation and false light claims must move forward.

Under Pennsylvania law, truth as a defense to defamation does not require literal accuracy in every detail. "The law does not require perfect truth, so long as any inaccuracies do not render the substance and 'gist' of the statements untrue." ToDay's Hous. v. Times Shamrock Commc'ns, Inc., 21 A.3d 1209, 1215 (Pa. Super. Ct. 2011) (citation omitted). The "gist" of a statement is true "if the effect upon a reader is the same regardless of the inaccuracy." Id.; see also Dunlap v. Philadelphia Newspapers, Inc., 448 A.2d 6, 15 (Pa. Super. Ct. 1982) (explaining that the proof of "truth" must go to the "gist" or "sting" of the defamation and that the test is whether the publication would have a different

23

effect on the mind of the reader than what the pleaded truth would have produced).  "Substantial truth 'absolve[s] a defendant even if she cannot justify every word of the alleged defamatory matter; it is sufficient if the substance of the charge be proved true, irrespective of slight inaccuracy in the details.' " Rubin v. CBS Broad. Inc., 170 A.3d 560, 565 (Pa. Super. Ct. 2017) (quoting Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 516–17 (1991)).

The gist of Kass-Gerji's media statements, taken as a whole, is that Vespico engaged in a pattern of harassment, threats, and stalking directed at the defendant.  A court determined that such conduct occurred after a contested two-day evidentiary hearing.  The car vandalism allegation, even if unproven, does not alter the gist or sting of Kass-Gerji's statements.  It is of the same character as the conduct the D.C. Superior Court found to be true.  It does not place Vespico in a different category or attribute a materially different type of misconduct.  A reasonable reader who learns that Vespico stalked, harassed, and threatened Kass-Gerji to the point that a court entered an ASO would not form a materially different impression upon additionally learning that the defendant also alleged that the plaintiff vandalized her car.  Substantial truth tolerates minor imperfections.

The same analysis applies to the false light claim. The operative inquiry is the overall impression created by the publication, whether the "false light" would

24

be "highly offensive to a reasonable person." RESTATEMENT (SECOND) OF TORTS § 652E. The car vandalism allegation does not place Vespico in a materially different light than the light the true statements already place her in. She is portrayed as a person who engaged in harassing, threatening, and intimidating conduct directed at Kass-Gerji, a portrayal that is substantially accurate in light of the D.C. Superior Court's findings. The addition of a single allegation of property damage, consistent in character with the pattern of conduct the court found to have occurred does not alter that overall impression in a way that would be independently actionable.

Additionally, Vespico's "fraud upon the court" argument is meritless. Like the Federal Rules of Civil Procedure, Vespico had one year to file a motion for relief from the ASO order on the grounds of fraud, misrepresentation, or misconduct by an opposing party. D.C. SUPER. CT. R. CIV. P. 60(b)(3), (c). She did not. Consequently, there is no evidence that Vespico has done anything other than make superficial allegations of fraud. That is insufficient to stop the court from dismissing this case under Rule 12(b)(6).[12]

---

[12] The court need not reach Kass-Gerji's other arguments about res judicata or Pennsylvania's judicial privilege.

25

### 3. **Pennsylvania's Uniform Public Expression Protection Act**

In the final paragraph of her brief in support, Kass-Gerji invokes the provisions of Pennsylvania's Anti-SLAPP Act, more formally known as the Uniform Public Expression Protection Act or Act 72 of 2024, 42 PA. CONS. STAT. §§ 8320.1, 8340.11–8340.18. Kass-Gerji specifically requests an award of attorneys' fees and costs under the Act.

The Anti-SLAPP Act adds a relatively new wrinkle to this case, as it came into effect approximately one month after the 2024 Miss Pennsylvania competition. In response to Kass-Gerji's fee request, Vespico argues that defendant's media statements do not constitute "protected public expression" within the meaning of the Act. See 42 PA. CONS. STAT. § 8340.13. In her reply brief, Kass-Gerji focuses on that same statutory definition, contending that her statements fall within the Act's scope as communications "on an issue under consideration or review" in a judicial proceeding, or alternatively, as an exercise of her rights to freedom of speech on a matter of public concern.

After considering the parties' arguments and carefully reviewing the statute, the Act may well apply to the circumstances of this case. However, the current record is insufficient to permit a fee award at this time and the issues involved warrant more focused briefing than the parties have provided. Consequently, the court will review the statutory framework, identify the remedial paths available to

26

the defendant, and establish a procedure by which she may elect to pursue her statutory remedies.

## a. The Statutory Framework

Pennsylvania's Anti-SLAPP statute was enacted to address what the General Assembly found to be "a disturbing increase in lawsuits brought primarily to chill the valid exercise of protected public expression." 42 PA. CONS. STAT. § 8340.12(1). The Act "grants immunity to those groups or parties exercising the rights to protected public expression" and "awards attorney fees to parties that are forced to defend against meritless claims arising from the exercise of the rights to protected public expression." Id., § 8340.12(3)(i)–(ii).

Section 8340.13 defines "protected public expression" to include three categories of activity: (1) communication in a legislative, executive, judicial, or administrative proceeding; (2) communication on an issue under consideration or review in such a proceeding; or (3) the exercise of rights to freedom of speech, press, assembly, petition, or association on matters of public concern, as guaranteed by the First Amendment or Article I, Sections 7 and 20 of the Pennsylvania Constitution. Id., § 8340.13.

Section 8340.14 sets forth the scope of the Anti-SLAPP Act. It does not apply to claims seeking damages for bodily injury or death unless the claim is for 1) defamation; 2) publication of private facts; 3) false light invasion of privacy; 4)

27

misappropriation of likeness; 5) intentional or negligent infliction of emotional distress; or 6) arises solely from a communication on a matter of public concern. Id., § 8340.14. Here, the defamation and false light claims are covered.

Section 8340.15 is the immunity provision. Pursuant to Section 8340.15, a person is immune from civil liability for a cause of action based on protected public expression if the opposing party: (1) fails to establish a prima facie case as to each essential element of the cause of action; (2) fails to state a cause of action upon which relief can be granted; or (3) there is no genuine issue as to any material fact, and the person against whom the cause of action has been asserted is entitled to judgment as a matter of law. Id., § 8340.15. Based on the ruling granting a Rule 12(b) motion for failure to state a claim, an award of attorneys' fees in this matter appears to turn on whether Kass-Gerji's statements were matters of public concern.

Separately, the Act creates a freestanding cause of action under 42 PA. CONS. STAT. § 8320.1—the SLAPP-back provision—which authorizes a person to bring an independent action for fees and damages where: (1) the person would have prevailed on a ground under Section 8340.15 in a prior action; but (2) the court presiding over the prior action did not make a determination on immunity. Id., § 8320.1(a). A prevailing party under a Section 8320.1 cause of action may recover attorney fees, court costs, and expenses of litigation from the underlying

28

action, *and* punitive damages upon proof that the underlying action "was commenced or continued for the sole purpose of harassing, intimidating, punishing or maliciously inhibiting" protected public expression. Id., § 8320.1(b).

### b. No Immunity Determination

Above, the court has dismissed Vespico's claims with prejudice. In so doing, the undersigned is not making a formal determination of Kass-Gerji's immunity under 42 PA. CONS. STAT. § 8340.15.

There are two reasons for this. First, the parties' briefing on Pennsylvania's Anti-SLAPP Act was a little light compared to the rest of their submissions. Kass-Gerji raised the issue in a single paragraph at the conclusion of her brief in support of the motion to dismiss. Vespico's opposition brief contested the threshold applicability of the Act, specifically, whether extra-judicial media statements qualify as "protected public expression" under Section 8340.13. However, Vespico's opposition did not address the immunity standard of Section 8340.15 or the fee-shifting mechanics of Section 8340.18 in the requisite detail. Subsequently, Kass-Gerji's reply brief sharpened her definitional argument under Section 8340.13 but did not provide the court with a developed record on her actual fees.

Additionally, neither party addressed the Erie implications of applying the provisions of Pennsylvania's Anti-SLAPP Act in a federal diversity action. These

29

are issues of first or early impression in this Circuit which warrant careful analysis. Specifically, at least one district court has determined that Pennsylvania's Anti-SLAPP statute does not apply in federal court. Salaam v. Trump, 350 F.R.D. 14, 21 (E.D. Pa. 2025), app. filed, 25-2230 (3d Cir. July 9, 2025); see also Jakes v. Youngblood, 782 F. Supp. 3d 210, 218 (W.D. Pa. 2025) (determining that Section 8340.15 is in direct conflict with Federal Rules of Civil Procedure 12(b)(6) and 56). On the other hand, the Act appears to contain at least a partially-congruent immunity section, 42 PA. CONS. STAT. § 8340.15, which stands out among numerous procedural sections, id., §§ 8340.16 (authorizing special pretrial motions and stays), 8340.17 (creating interlocutory appeal as of right). See also Paucek v. Shaulis, 349 F.R.D. 498, 513–18 (D.N.J. 2025) (determining that a defendant can shift fees, costs, and expenses under New Jersey's uniform Anti-SLAPP statute if he succeeds under Rule 12 or Rule 56).

Second, even if the court were prepared to make a Section 8340.15 immunity determination at this juncture, the record contains no information from which an award could be calculated. Kass-Gerji has not submitted billing records, an affidavit of counsel attesting to hours expended and rates charged, documentation of costs incurred, or any of the other materials necessary for the court to apply the lodestar method. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (requiring documentation of hours and rates to support a fee award); see

30

also 42 PA. CONS. STAT. § 8340.18 (requiring an award of "attorney fees, court costs and expenses of litigation" without specifying a methodology, thus inviting the application of established fee-petition practice).  Vespico would need such information to make a formal challenge.  Therefore, the fee request is not competition-ready.

### c. Election of Remedies

As a final consideration, if Vespico's conduct in filing this lawsuit triggers Pennsylvania's Anti-SLAPP Act, then Kass-Gerji must be able to elect her remedies; otherwise, the General Assembly would not have enacted the SLAPP-back provision at Section 8320.1, which created a separate statutory cause of action for punitive damages.

Accordingly, the court's disposition without a Section 8340.15 determination specifically preserves two statutory paths for Kass-Gerji, each with distinct limitations and advantages.  The undersigned will permit Kass-Gerji to make an informed election.

### *Option 1 – Motion for Determination of Immunity and Fee Award in this Action*

Kass-Gerji may file a motion within 21 days of the date of this memorandum requesting that the court make a formal determination of immunity under 42 PA. CONS. STAT. § 8340.15 and award attorneys' fees and costs under Section 8340.18.  If Kass-Gerji elects this path, the motion shall include, at a

31

minimum: 1) a fee petition with supporting documentation, including contemporaneous billing records, an affidavit of counsel setting forth the hours reasonably expended and the rates charged, and an itemization of costs and expenses; and 2) a more-detailed brief addressing whether the defendant's media statements constitute "protected public expression" under Section 8340.13. The brief must also address the applicability of the Act's provisions in federal court. Vespico will then have 14 days to respond with reply briefing due 14 days after that.

This path offers the advantage of potentially resolving Kass-Gerji's fee claim in this action without commencing a new lawsuit. It does not, however, permit an award of punitive damages. <u>Compare</u> 42 PA. CONS. STAT. § 8320.1 <u>with</u> § 8340.18.

### *Option 2 – Separate Action Under Section 8320.1 in the Pennsylvania Court of Common Pleas*

Alternatively, Kass-Gerji may elect not to file a motion for fees in this action and instead pursue a freestanding cause of action under 42 PA. CONS. STAT. § 8320.1 in a county Court of Common Pleas. Because the undersigned has not decided immunity under Section 8340.15, Kass-Gerji would be able to aver that the statutory predicates for a Section 8320.1 SLAPP-back action are satisfied in her Court of Common Pleas complaint. 42 PA. CONS. STAT. § 8320.1(a)(1)–(2).

32

The second path offers a broader remedy.  This path also avoids the <u>Erie</u> question entirely, as the action would be brought in a state court.  It does, however, require a separate lawsuit, with attendant filing costs, service obligations, and independent briefing.

These two paths are mutually exclusive.  If the court makes a formal determination of immunity under Section 8340.15 in this action, after getting over any <u>Erie</u> hurdle, that prong of Section 8320.1(a) will no longer be satisfied, and the SLAPP-back cause of action will be foreclosed.  Kass-Gerji cannot obtain a fee award under Section 8340.18 in this action and then separately pursue punitive damages under Section 8320.1 in state court.  She must therefore choose one path or the other.  However, in the event that Kass-Gerji does not file a motion or notice of election within 21 days, an order will be entered closing the case.

**Conclusion**

For the reasons set forth above, Kass-Gerji's motion to dismiss will be granted and her request for attorneys' fees and costs under Pennsylvania's Anti-SLAPP statute will be deferred pending an election of remedies.  An appropriate order follows.

Date: 3/16/26

_____
JUDGE JULIA K. MUNLEY
United States District Court

33